**FRARY PAPER & PACKAGING CORPORATION, Plaintiff,**

v.

**David B. FRARY, Trish Frary, and Phoenix Paper & Packaging, Inc., Defendants.**

**No. 90 C 5604.**

United States District Court, N.D. Illinois, E.D.

Dec. 12, 1991.

Mark D. Pearlstein, Gary Irwin Blackman, Konstantinos Armiros, Boehm & Pearlstein, Ltd., Chicago, Ill., for plaintiff and counter-defendant.

Constance Burnett Renzi, Gary Knight Mickey, Larson, Mickey & Weiler, Aurora, Ill., Champ W. Davis, Jr., Laura Beth Miller, Julia Dee Mannix, Lamet, Kanwit & Davis, Chicago, Ill., for defendants and counter-claimants.

## MEMORANDUM OPINION AND ORDER

ASPEN, District Judge:

Defendants Trish Frary and Phoenix Paper & Packaging, Inc. ("Phoenix Paper") have moved for summary judgment on Counts III, IV, V, and VI of plaintiff Frary Paper & Packaging Corp.'s ("Frary Paper") second amended complaint.[1] At issue here is a "consulting agreement" between Trish Frary's former husband, David B. Frary, and Frary Paper. For the reasons set forth below, we grant the motion for summary judgment on all counts seeking relief from Trish Frary and Phoenix Paper.[2]

---

1. We grant Frary Paper's motion for leave to file its second amended complaint. Trish Frary and Phoenix Paper have offered no substantive objection to Frary Paper's motion. Response to Motion to Amend Complaint at 1–2. As an

abridged road map, Count III seeks a constructive trust, Counts IV and V injunctive relief, and Count VI summarizes the alleged damages.

2. Trish Frary and Phoenix Paper have also filed a motion to strike factual statements pursuant

## I. Summary Judgment Standard

Under the Federal Rules of Civil Procedure, summary judgment is appropriate if "there is no genuine issue as to any material fact and ... the moving party is entitled to a judgment as a matter of law." Fed. R.Civ.P. 56(c). This standard places the initial burden on the moving party to identify "those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any' which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986) (quoting Rule 56(c)). Once the moving party has done this, the non-moving party "must set forth specific facts showing that there is a genuine issue for trial." Fed.R.Civ.P. 56(e).

The non-moving party's burden at that stage entails more than the mere raising of " 'some metaphysical doubt as to the material facts.' " *Beard v. Whitley County REMC*, 840 F.2d 405, 410 (7th Cir.1988) (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986) (footnote omitted)). A genuine issue is created for trial only when the non-moving party presents sufficient factual allegations to enable a rational trier of fact to find in its favor. If it fails to shoulder this burden, summary judgment should be granted. *Id.; see also Holland v. Jeffer-* *son Nat'l Life Ins. Co.*, 883 F.2d 1307, 1312 (7th Cir.1989).

## II. Factual Background

Except as noted, the following facts are undisputed. Prior to July 12, 1989, David Frary owned a fifty percent interest in Frary Paper. On July 12, 1989, he transferred his ownership interest to Frary Paper, and also entered into a consulting agreement with the company. The agreement provided that David Frary would act as a consultant to Frary Paper until June 30, 1990. It also contained a noncompetition provision, in effect until January 1, 1991, by which David Frary promised not to solicit certain identified customers to buy certain listed products.[3]

Neither Trish Frary nor Phoenix Paper were a party to the consulting agreement—indeed, Trish Frary did not incorporate Phoenix Paper until January 23, 1990. Trish Frary has never held an ownership interest in Frary Paper, nor has she ever been employed by Frary Paper. She has never entered into any contract with Frary Paper not to solicit Frary Paper's customers. She has never received any money or other consideration from Frary Paper as an inducement for her not to solicit Frary Paper's customers.

When David Frary signed the consulting agreement, he and Trish Frary were married and living together. Shortly there-

---

to Fed.R.Civ.P. 37. Resolution of the motion for summary judgment renders the motion to strike moot.

**3.** Frary Paper argues that the noncompetition provision prohibited David Frary from competing in any fashion with the company, and cites to the depositions of David Frary and Russell Rabjohns, Frary Paper's president and sole officer, as proof of that proposition. First of all, it is not entirely clear that David Frary's deposition supports this argument. Asked generally "What was your understanding of the consulting agreement with respect to your contacting these people after you had terminated?," David Frary answered, "For six months not to contact or solicit business." David Frary Deposition at 51.

Secondly, the agreement itself contains an "entire agreement and modification" clause, which provides that

This Agreement expresses the entire agreement among the parties and supercedes [sic] any and all other agreements between the parties hereto.... No changes, modifications, or additions to this Agreement shall be valid unless the same shall be in writing and signed by each of the parties hereto. Rule 12(m) Statement of Facts, Exhibit C (Consulting Agreement ¶ 8.2). Thus, it is irrelevant what David Frary or Rabjohns thought insofar as such belief is contrary to the plain, unambiguous written terms of the agreement. *McCarthy v. Johnson*, 122 Ill.App.3d 104, 108, 77 Ill.Dec. 458, 462, 460 N.E.2d 762, 766 (1st Dist.1983). When contractual language is unambiguous, as here, and clearly defines the obligations of the parties, that language governs as a matter of law, "and there is no need for construction or inquiry as to the intention of the parties." *P.A. Bergner & Co. v. Lloyds Jewelers, Inc.*, 112 Ill.2d 196, 203, 97 Ill.Dec. 415, 418, 492 N.E.2d 1288, 1291 (1986).

after, they moved to Ashville, North Carolina. The Frarys separated on November 1, 1989, and were legally divorced on January 10, 1991.

David Frary set up a new paper and packaging business in North Carolina called FPQ Packaging ("FPQ"). Trish Frary worked at FPQ until sometime in the first quarter of 1990 (even after her separation from her husband). When she quit, she began operating Phoenix Paper, and has been the president and sole shareholder of, and sole salesperson for, that business ever since.

As the salesperson for Phoenix Paper, Trish Frary solicited customers upon whom she had called when she worked for FPQ. She also began calling on potential customers in the Chicago area. She had learned the names of at least some of these customers because she had accompanied her husband when he had entertained them for Frary Paper. Frary Paper contends that, in fact, the only customers in the Chicago area that Trish Frary called were customers David Frary was prohibited from contacting. Be that as it may, all contact by Trish Frary beginning in the Spring of 1990 with the customers identified as off-limits to David Frary in the latter's consulting agreement was on behalf of Phoenix Paper.

The key to the instant motion for summary judgment is in the next few assertions. Trish Frary and Phoenix Paper maintain that:

> At no time[ ] did Trish Frary request any advice from David Frary concerning the solicitation of these customers. [Citation.] Neither Trish Frary nor Phoenix Paper has requested David Frary to solicit any business from these customers for Phoenix Paper. [Citation.] David Frary is not, and has never been, a proprietor, employee, agent, consultant, partner, director, officer or stockholder of Phoenix Paper. [Citation.]

Rule 12(m) Statement ¶¶ 29–31.

Frary Paper denies these assertions. As support, it cites to the depositions of two customers contacted by Trish Frary. Dennis Butzow of Capco Lettering testified that in March or April 1990, David Frary introduced him to Trish Frary and told him that Trish Frary "could service our account through Phoenix Paper...." Butzow Deposition at 11. Butzow also recalled that David Frary told him that the products he was buying from Frary Paper could be purchased from Phoenix Paper. *Id.*

The second customer, Edward Hotujec of Swift–Echrich Meats, testified that David Frary introduced him to Trish Frary, perhaps in August 1990, and asked if he would mind if his wife started calling on him. Hotujec Deposition at 13. Hotujec also remembered that one of the Frarys told him that he could get from Phoenix Paper the same products he was buying from Frary Paper. *Id.* at 14.

Finally, Trish Frary claims that she had no specific knowledge of the noncompetition provision in David Frary's consulting agreement with Frary Paper. Citing essentially the same portions of Trish Frary's deposition, Frary Paper disputes that claim. The relevant excerpts from that deposition are as follows:

Q: [Prior to your moving to North Carolina,] did you have any knowledge of what [your husband's] arrangement was with Mr. Rabjohns?

A: I didn't know the exact details.

Q: Generally, did you understand it?

A: I knew he had to come back two times a month for one year to work.

Q: Did you know that from June of 1989 to June of 1990, he was being paid by Mr. Rabjohns as a consultant?

A: Yes.

Q: That's why he would have to come back and service some of his old customers?

A: Yes.

Q: Were you also aware that there was an agreement that from approximately June 30, 1990 to the end of the year, after he finished his consulting, that he was not allowed to contact any of his former customers?

A: Yes.

Q: I want to show you what we'll mark as Exhibits B, which is a consulting agreement, dated July 12th; and C,

which is a stock purchase agreement, dated that same day.... You have those before you, ma'am; have you seen or do you recognize either of these documents?

A: No.

Q: Have you ever seen them before?

A: No.

Q: Did your husband ever discuss with you the nature or the content of these documents?

A: He told me basically that he had to go back two times a month for a year, and then for six months following he couldn't compete.

Trish Frary Deposition at 30–31.

### III. Analysis

■ One might imagine that Frary Paper would be championing an agency or alter ego theory in its quest to hold Trish Frary and Phoenix Paper—non-signatories to the consulting agreement it had with David Frary—liable for its alleged injuries. Indeed, it is Trish Frary's conduct, on behalf of Phoenix Paper, that Frary Paper has alleged is in violation of David Frary's consulting agreement.

In their initial memo, Trish Frary and Phoenix Paper argue that Phoenix Paper is not the alter ego of David Frary, and that no agency relationship exists among the defendants. Frary Paper obviates the need to consider these arguments, however, because it expressly denies that it wishes to proceed under those theories: "Defendants['] conclusion that Plaintiff's complaint, in essence, pleads agency or an alter ego theory is not only incorrect but is an attempt to limit this court's inquiry into the relationship between David and Trish Frary." Response at 5.

Frary Paper instead puts most of its eggs in a basket fashioned from one state appellate court decision, *Arwell Div. of Orkin Exterminating Co. v. Kendrick,* 131 Ill.App.2d 632, 267 N.E.2d 352 (3d Dist. 1971). In *Kendrick,* the appellate court affirmed the entry of both temporary and permanent injunctions against John and Marguerite Kendrick to enforce a restrictive covenant against John Kendrick. *Id.* at 632, 267 N.E.2d at 353. John Kendrick had been employed by Arwell for sixteen years; his contract with the company prohibited any direct or indirect competition with Arwell within a certain area for a certain time following termination. *Id.* In response to Arwell's suit to enforce the restrictive covenant, John Kendrick argued that he had not violated it because whatever exterminating business in competition with Arwell "was solely the business of his wife Marguerite." *Id.* at 633, 267 N.E.2d at 353. Marguerite Kendrick maintained that the covenant could not be enforced against her because she "was a stranger to the employment contract." *Id.* at 633, 267 N.E.2d at 354.

While the broad language Frary Paper cites to from the opinion is there for all to read, the court's holding is this:

> Marguerite Kendrick was only nominally the proprietor of an exterminating business in LaSalle. As between John and Marguerite Kendrick it was a matter of form only and not of substance. She was in fact *the alter ego* of John Kendrick and in our opinion the trial court correctly held that her conduct of the business was a thinly veiled subterfuge designed to avoid her husband's obligation under the contract.

*Id.* at 634, 267 N.E.2d at 354 (emphasis added).

Thus, because Frary Paper has disavowed any reliance on an alter ego theory, its dependence on *Kendrick*—a case in which such a relationship was found—is misplaced. Contrary to its belief, Response at 7, the fact that Trish Frary and Phoenix Paper are not parties to David Frary's consulting agreement does everything to advance their position that this is a proper case for summary judgment, particularly when there is no assertion that Phoenix Paper was David Frary's alter ego.[4]

---

**4.** At the conclusion of its discussion of *Kendrick,* Frary Paper claims that, "[i]f all a party needed to do to avoid inferences of collusive conduct was construct a facade of autonomy and independence, no Plaintiff would ever be able to bring a case like this to trial." Response

Even if we examine the underlying rationale of the decision in *Kendrick*, we are forced to find that David Frary's relationship with Phoenix Paper does not create a genuine issue of material fact such that summary judgment for Trish Frary and Phoenix Paper is unwarranted. Frary Paper has presented no evidence that David Frary put money into Phoenix Paper, that he had any input into the daily details of the operation of Phoenix Paper, or "was otherwise involved in the business" as was Trish Frary. *Kendrick*, 131 Ill.App.2d at 634, 267 N.E.2d at 354. Therefore, we have no basis for denying summary judgment on an alter ago theory or on any other more broadly defined (but not labelled) relationship test Frary Paper might choose instead.

The Butzow and Hotujec depositions do not counsel otherwise. Both men testified that David Frary introduced them to Trish Frary, but they also testified that Trish Frary was their sole contact at Phoenix Paper. Butzow Deposition at 16–18; Hotujec Deposition at 18, 20. We agree with Trish Frary and Phoenix Paper that the "sandcastle of inferences" based on this deposition testimony and the fact that David and Trish Frary were at one time married is insufficient to prevent entry of summary judgment against Frary Paper. Reply at 7.

Our inquiry does not end there. Count III seeks imposition of a constructive trust over "any and all proceeds and profits obtained by ... Trish Frary and Phoenix [Paper as] a result of either Defendant's contacts with the Protected Customers...." Second Amended Complaint at 8. The basis for this count would appear to be Frary Paper's contention that, "[i]n direct violation of the Consulting Agreement, Trish Frary, at the direction of or in cooperation with David Frary, directly contacted the Protected Customers which were specifically listed as those from which David Frary could not solicit business." *Id.* at 7. In other words, "[b]y directly soliciting business from the Protected Customers, Trish Frary and Phoenix [Paper] have induced a

breach of a fiduciary duty or have participated in such a breach, and have knowingly accepted the benefit from the breach and are therefore directly liable to" Frary Paper. *Id.*

Counts IV (as to Trish Frary) and V (as to Phoenix Paper) seek an injunction prohibiting solicitation of or other business dealings with those Frary Paper customers listed in the consulting agreement. *Id.* at 10. An injunction is appropriate, Frary Paper contends, because it has identified "a protectable business interest, namely, certain customers which David Frary agreed he would not solicit business from in exchange for $20,000." *Id.* at 9.

█ State law requires that to establish the need for a constructive trust over third parties like Trish Frary and Phoenix Paper, Frary Paper must show that a fiduciary relationship existed between itself and David Frary, that an abuse of that fiduciary relationship occurred, and that Trish Frary or Phoenix Paper either induced or knowingly participated in that breach. *A.T. Kearney, Inc. v. INCA Int'l, Inc.*, 132 Ill.App.3d 655, 661, 87 Ill.Dec. 798, 804–05, 477 N.E.2d 1326, 1332–33 (1st Dist.1985); *Village of Wheeling v. Stavros*, 89 Ill. App.3d 450, 453, 44 Ill.Dec. 701, 704, 411 N.E.2d 1067, 1070 (1st Dist.1980). Phrasing the third plank of the test in slightly different terms, the Seventh Circuit has observed that a constructive trust will not be imposed unless the legal owner has engaged in some wrongdoing. *CFTC v. Heritage Capital Advisory Servs., Ltd.*, 823 F.2d 171, 172 (7th Cir.1987) (citing *Baumgartner v. First Church of Christ*, 141 Ill.App.3d 898, 96 Ill.Dec. 114, 490 N.E.2d 1319 (1st Dist.), *cert. denied*, 479 U.S. 915, 107 S.Ct. 317, 93 L.Ed.2d 290 (1986).

Here, as discussed earlier, there is no indication that either Trish Frary or Phoenix Paper had any contractual obligation to Frary Paper. Nor is there any direct suggestion that Phoenix Paper was David Frary's alter ego or that David Frary was an agent of Phoenix Paper or Trish Frary—indeed, these are theories specifi-

at 7–8. Few justifications for the alter ego theo-                    ry have ever been so pithy.

**506**

cally rejected by Frary Paper. Further, Frary Paper has presented no evidence that counters Trish Frary and Phoenix Paper's key assertions—namely, that Trish Frary did not request any advice from David Frary concerning the solicitation of these customers, that neither Trish Frary nor Phoenix Paper requested David Frary to solicit any business from these customers for Phoenix Paper, and that David Frary is not connected to Phoenix Paper.

Again, the Butzow and Hotujec depositions do not suggest otherwise. Frary Paper argues that, "[i]f true, these actions [by David Frary] constitute a violation of the Non–Compete Agreement," Response at 7, which may or may not be true. Even if true, however, we find no evidence by which Trish Frary or Phoenix Paper may be held responsible to Frary Paper for David Frary's actions.[5]

Absent any evidence of wrongdoing by Trish Frary or Phoenix Paper, we grant summary judgment against Frary Paper on Count III. We also grant summary judgment against Frary Paper on Counts IV and V. There is no reason for this court to prohibit Trish Frary and Phoenix Paper from engaging in competition with Frary Paper when the evidence is clear and undisputed that Trish Frary did not sign and is not bound by the consulting agreement, that she signed no other contract not to solicit customers of Frary Paper, and that she has never received any money or other consideration from Frary Paper as an inducement for her not to solicit Frary Paper's customers.

Finally, Trish Frary and Phoenix Paper are entitled to summary judgment on Count VI, which seeks lost profits and goodwill. As they point out, Frary Paper has alleged no cause of action which would justify such an award as against Trish Frary and Phoenix Paper.

### IV. Conclusion

As explained above, we grant Trish Frary and Phoenix Paper's motion for summary judgment on Counts III, IV, V, and VI of Frary Paper's second amended complaint. A status hearing will be held on December 20, 1991, at 10:00 a.m. Counsel for Frary Paper and David Frary are to be present to advise the court as to how they will proceed. It is so ordered.

---

5. Frary Paper argues that, given an inference of a violation of the consulting agreement by David Frary, it "need only present this Court with evidence from which the inference can be arrived at that Defendants were acting in concert to evade the duties *imposed on them* by the Non–Compete Agreement." Response at 7 (emphasis added). Perhaps better than anything else, that assertion illustrates the fundamental flaw in Frary Paper's case against Trish Frary and Phoenix Paper. Only David Frary was bound by the consulting agreement.