RUSSELL SWADER *et al.*, Plaintiffs-Appellees and Cross-Appellants, v. GOLDEN RULE INSURANCE COMPANY, Defendant-Appellant and Cross-Appellee (Michael Pokojski *et al.*, Defendants-Appellees).

Fifth District   No. 5—88—0508

Opinion filed August 7, 1990.—Rehearing denied September 13, 1990.

Guy E. McGaughey, Jr., of McGaughey & McGaughey, Ltd., of Lawrenceville, and Timothy S. Richards, of Gundlach, Lee, Eggmann, Boyle & Roessler, of Belleville, for appellant.

Melroy B. Hutnick, of Belleville, for appellee Russell Swader.

JUSTICE RARICK delivered the opinion of the court:

This convoluted case begins simply with the fact that prior to June of 1982 the City of Mascoutah (the City) had health and hospitalization coverage for its employees through a group insurance policy with Prudential Insurance Company, but because of rising rates, wished to find new coverage. Pursuant to this end, the City offered several agents of various insurance companies the opportunity to meet with its employees one evening in May to discuss their respective group health insurance plans. The agent who sold the City its Prudential policy, Michael Pokojski, was offered the same opportunity. Pokojski naturally wished to retain the City's business, and realizing Prudential was out of the question, decided to search for suitable alternatives. Pokojski from 1976 up to this point had been an employee of Prudential Insurance Company. He had decided, however, as early as February of 1982 to leave Prudential because of its rising rates, get a broker's license and sell other insurance.

Pokojski joined forces with Jim Campbell, an independent insurance broker, who was then starting up Diversified Financial Services, a partnership of independent insurance brokers. Pokojski began soliciting coverage for other companies even though he was on Prudential's payroll until July of 1982.

Pokojski, aware of the upcoming meeting with the City employees, began searching for alternative policies. While visiting another broker's office sometime in April of 1982, Pokojski met William Plumlee, an Illinois district manager for Golden Rule Insurance Company. Pokojski informed him that Prudential's rates were increasing for almost all of his clients and that he was looking for a company with similar coverage but better rates. According to Pokojski, Plumlee gave him a Golden Rule Insurance kit from the trunk of his car and told him how to figure rates. Plumlee, on the other hand, testified he may have met Pokojski in April on a casual basis but conducted no business activity with him at that time. According to Plumlee, all business transactions began in June, after Pokojski's meeting with the City employees. Pokojski also went to one of Diversified's brokers, Robert Edmondson, to discuss bidding on the City employees' health insurance. Edmondson suggested Golden Rule. Edmondson got out his Golden Rule Insurance kit, compared it with the one Plumlee gave to Pokojski, and went over both of them with Pokojski to help him prepare for the presentation to the City employees. Pokojski subsequently met with the City on May 19 and informed the employees he was there on behalf of Golden Rule Insurance Company as a broker. Pokojski told the employees, in accordance with the brochure issued by Golden Rule contained in his kit, that Golden Rule was a take-over type of insurance and would provide coverage for preexisting conditions without limitation up to the amount of coverage that had been provided by Prudential. The brochure Pokojski used bore an issue date of September 1980. Golden Rule, however, had issued a new brochure in February 1982 which listed a $3,000 cap on preexisting conditions. Because he did not have any copies of the new brochures, Pokojski was unaware of this change. The City ultimately chose coverage through Golden Rule as represented by Pokojski with its policy to go into effect June 1, 1982. Pokojski, however, did not have a license to sell Golden Rule as of yet; consequently, all of the paperwork went in over the signature of Edmondson, an independent broker for Golden Rule, per Plumlee's instructions. After sending in the application, Pokojski then went around to each City employee to enroll him or her specifically within the coverage of the Golden Rule pol-

icy using what was referred to as the "long form." The long form contained spaces for information concerning an applicant's health and preexisting conditions. Upon submitting the long forms to Golden Rule, Pokojski was informed by someone in underwriting to use the short form registration cards to enroll the employees. The short forms requested no information pertaining to the applicant's health or preexisting conditions. On June 16, 1982, Golden Rule contacted by mail both Edmondson and the City clerk to notify the City of Golden Rule's acceptance of its application for group health insurance coverage effective June 1, 1982, and to request that a corrected application be sent in. The requested application accordingly was signed by both the clerk and Edmondson and returned to Golden Rule. Also included in the June 16 correspondence, however, was a letter advising the City of a $3,000 cap for coverage of preexisting conditions for the first 12 months. The City clerk testified she never saw this letter. Several months later, individual policies were sent to each of the City employees. All of these policies contained the $3,000 cap, but apparently none of the employees noticed any such provisions.

Plaintiff Russell Swader was one of the City's employees covered under the Golden Rule Insurance group health plan. He learned of the $3,000 cap upon submitting hospital and medical bills, totalling some $16,600, in connection with surgery performed on August 13, 1982, to alleviate a blocked stomach. Swader initially visited the doctor who assisted in the surgery on July 15, 1982, a month and a half after the Golden Rule policy was in effect, complaining of marked weight loss, cramping sensations in the abdomen and vomiting almost once a week after meals. Swader informed the doctor he had ulcer problems for the past 15 years and was taking Tagamet for occasional flare-ups. The doctor believed all of Swader's conditions existed prior to June 1 and were connected to his history of ulcers. Golden Rule paid only the $3,000 cap, thereby eventually prompting Swader to file suit against Golden Rule, Edmondson and Pokojski. All three defendants accordingly filed counterclaims against each other. After the circuit court of St. Clair County granted a directed verdict against Swader on three fraud counts and struck Pokojski's counterclaim against Golden Rule, the jury returned a verdict in favor of Swader against Golden Rule, awarding him $16,604.11 in damages on his remaining counts. The jury also rendered a verdict in favor of Golden Rule upon its counterclaim against Edmondson, apportioning the damages 10% to Edmondson and 90% to Golden Rule, and a verdict in favor of Poko-

jski against Golden Rule on its counterclaim. Golden Rule appeals from the jury's verdict in favor of Swader and from the trial court's denial of its post-trial motions. Swader cross-appeals from the denial of his claim for attorney fees.

Golden Rule first argues on appeal the order of the trial court denying its motions for judgment *n.o.v.* is erroneous as the jury's verdict in favor of Swader is unsupported by any evidence, and therefore, against the manifest weight of the evidence. Golden Rule specifically points out Pokojski was not one of its agents, and neither he nor Edmondson, an independent broker, had authority to change the terms of Golden Rule's policies. Additionally, Golden Rule contends Swader's blocked stomach condition existed prior to June 1, 1982, whether or not it was related to his history of ulcers over the past 15 years.

██ █ As we have stated time and again, unless a jury verdict is unreasonable, arbitrary or not supported by the evidence, it will not be disturbed on review. (*E.g., Milwaukee Mutual Insurance Co. v. Wessels* (1983), 114 Ill. App. 3d 746, 751, 449 N.E.2d 897, 903; *Harris v. City of Granite City* (1977), 52 Ill. App. 3d 782, 784, 365 N.E.2d 1034, 1036.) Weighing the evidence and the credibility of witnesses and resolving apparent conflicts are functions of the trier of fact with which we will not interfere. (*E.g., Milwaukee Mutual*, 114 Ill. App. 3d at 752, 449 N.E.2d at 903.) While we sitting as the trier of fact may have reached a different conclusion, we cannot say that the verdict reached here is so unreasonable or so contrary to the evidence as to require reversal. (See *Moehle v. Chrysler Motors Corp.* (1982), 93 Ill. 2d 299, 305, 443 N.E.2d 575, 578.) Besides the fact the jury may not have believed Swader's stomach blockage constituted a preexisting condition within the intendments of Golden Rule's provisions, or just as likely, that the City ever received the letter advising it of the $3,000 cap, the jury also could have believed Pokojski was acting as an agent for Golden Rule with apparent or implied authority to bind it to the policy as represented to the City, a fact which Golden Rule was estopped from denying or actually ratified by its subsequent conduct. After all, Golden Rule did accept Pokojski's business and the City's insurance coverage even after learning of the nature of the transaction.

██ █ In general, the existence of an agency relationship may be established, and its nature and extent shown, by circumstantial evidence, and reference may be had to the situation of the parties, their acts, and other circumstances germane to the question. (See, *e.g., Mateyka v. Schroeder* (1987), 152 Ill. App. 3d 854, 862-63, 504

N.E.2d 1289, 1294; *Tomaso v. Plum Grove Bank* (1985), 130 Ill. App. 3d 18, 23, 473 N.E.2d 588, 593.) If the evidence shows one acting for another under circumstances implying knowledge of the acts on the part of the supposed principal, a *prima facie* case of agency is established. (*Elmore v. Blume* (1975), 31 Ill. App. 3d 643, 647, 334 N.E.2d 431, 434.) Such a relationship, however, does not depend necessarily on an express appointment or acceptance by the principal and agent. *E.g., Mateyka*, 152 Ill. App. 3d at 863, 504 N.E.2d at 1294; *Milwaukee Mutual*, 114 Ill. App. 3d at 749, 449 N.E.2d at 901.

 ▪ It is true here that Pokojski, at the time of making his bid to the City, was not an agent in the employ of Golden Rule as that term is normally understood. (See *DeGraw v. State Security Insurance Co.* (1976), 40 Ill. App. 3d 26, 33, 351 N.E.2d 302, 308.) But, Pokojski held himself out as an agent representing Golden Rule to the City's employees. They had no reason to believe differently and subsequently procured Golden Rule insurance through him. More importantly, however, Pokojski informed Golden Rule he had sold its insurance to the City and specifically asked how he should submit the City's application since he was not a licensed agent for them at the present time. Plumlee, Golden Rule's regional sales manager, who incidentally gave Pokojski his first Golden Rule insurance kit if Pokojski's testimony is to be believed, told him to put it through over Edmondson's signature. Golden Rule, now aware of the situation, accepted the benefits of Pokojski's acts in the form of premiums from the City. Instead of rejecting the City's application or repudiating the insurance coverage, Golden Rule went further. When Pokojski submitted the long forms detailing health and preexisting conditions of the City employees, Golden Rule instructed him to use the short forms which required no such information. Golden Rule claims it then advised the City of the $3,000 cap. One wonders why this feature was specifically highlighted in the communication to the City on June 16 if this were the only type of insurance Golden Rule now offered and had been offering for several months preceding the City's application. The jury easily could have believed Golden Rule was aware there was a problem, having received an older application form, but took inadequate means to notify those involved of potential misunderstandings or misrepresentations in order to keep the City's insurance business. We further note Pokojski's representations of complete coverage for preexisting conditions were not "made out of the blue" but rather were made in reliance upon brochures issued by Golden Rule and distributed to him through either

Plumlee or Edmondson or both. These brochures induced the City employees to choose Golden Rule; Golden Rule under the circumstances should be bound by its representations made through Pokojski when it accepted the benefits of his solicitation. (See *Dobosz v. State Farm Fire & Casualty Co.* (1983), 120 Ill. App. 3d 674, 680, 458 N.E.2d 611, 615. See also *Armstrong v. United Insurance Co.* (1981), 98 Ill. App. 3d 1132, 1144, 424 N.E.2d 1216, 1225.) Furthermore, while an insured typically is charged with notice of the contents of his insurance policy (see *Dobosz*, 120 Ill. App. 3d at 682, 458 N.E.2d at 616), here the policies were not made available to the employees until September, well after Swader's surgery. The employees believed they had certain coverage, led their lives accordingly and did not look for other insurance coverage to their detriment when Golden Rule had several, if not unlimited, opportunities earlier in the relationship to correct the situation. We cannot say the jury would have been in error if it believed Golden Rule was estopped from denying coverage under these circumstances when estoppel signifies an abatement, raised by law, of rights and privileges of the insurer where it would be inequitable to permit their assertion. While such relinquishment need not be voluntary, intended or desired by the insurer, it does necessarily require prejudicial reliance on the part of the insured. See *Western Casualty & Surety Co. v. Brochu* (1985), 105 Ill. 2d 486, 500, 475 N.E.2d 872, 879; *Florsheim v. Travelers Indemnity Co.* (1979), 75 Ill. App. 3d 298, 304-05, 393 N.E.2d 1223, 1229; *DeGraw*, 40 Ill. App. 3d at 34, 351 N.E.2d at 309. See also *Tibbs v. Great Central Insurance Co.* (1978), 57 Ill. App. 3d 866, 868, 373 N.E.2d 492, 493.

■■■ It is also quite possible that the jury believed Golden Rule ratified Pokojski's actions in this instance. Ratification is a form of equitable estoppel involving the express or implied adoption of the acts of another by one for whom the other assumes to be acting, even without authority. At the heart of the doctrine of ratification is the concept that the person ratifying obtains a benefit, and that the benefit is obtained through the actions of a person that is acting in his behalf with apparent or implied authority. (See *In re Marriage of Jackson* (1989), 179 Ill. App. 3d 479, 484, 534 N.E.2d 687, 689; *Mateyka*, 152 Ill. App. 3d at 866, 504 N.E.2d at 1297; *Hofner v. Glenn Ingram & Co.* (1985), 140 Ill. App. 3d 874, 883, 489 N.E.2d 311, 316-17; *Advance Mortgage Corp. v. Concordia Mutual Life Association* (1985), 135 Ill. App. 3d 477, 484, 481 N.E.2d 1025, 1030-31.) As long as the principal has full knowledge of the facts and has the choice of either accepting or rejecting the benefits of

the transaction, ratification will be found. (See *Phipps v. Cohn* (1985), 139 Ill. App. 3d 210, 213, 487 N.E.2d 428, 431; *Reavy Grady & Crouch Realtors v. Hall* (1982), 110 Ill. App. 3d 325, 328, 442 N.E.2d 307, 310.) Being questions of fact for the trier of fact to resolve (see *Western Casualty*, 105 Ill. 2d at 500, 475 N.E.2d at 879), we cannot say the jury could not have found either estoppel or ratification to be applicable in this instance.

■ ■ Another possibility exists that the jury believed Golden Rule did in fact waive the $3,000 cap as evidenced by payments to other City employees of sums exceeding $3,000 for preexisting conditions even though occurring after Swader's claim arose and even though Golden Rule asserts they were mere mistakes. Waiver is the intentional relinquishment of a known right. It arises from an affirmative act of the defendant, and in the field of insurance law, generally is implied from the acts, words or conduct of the insurer or its agents. (See *Western Casualty*, 105 Ill. 2d at 499, 475 N.E.2d at 878; *Mulholland v. State Farm Mutual Automobile Insurance Co.* (1988), 171 Ill. App. 3d 600, 609, 527 N.E.2d 29, 34; *The Hartford v. Doubler* (1982), 105 Ill. App. 3d 999, 1002, 434 N.E.2d 1189, 1192.) In contrast to estoppel, no act of the insured is necessary to complete waiver; it is essentially unilateral, referring to a legal consequence of the insurer's act or conduct. (See *National Discount Shoes, Inc. v. Royal Globe Insurance Co.* (1981), 99 Ill. App. 3d 54, 59, 424 N.E.2d 1166, 1170.) Again, we cannot say under the circumstances presented here the jury could not reasonably have found waiver of the $3,000 cap.

Because there is sufficient evidence on the record to support the jury's verdict under several possible theories, we therefore are compelled to affirm the judgment as rendered.

■ Golden Rule argues, however, the jury, and consequently the trial court, erred in not giving it credit in the verdict and judgment for payment of benefits in the amount of $3,000 already made to Swader. We agree. It is clear from the record that Golden Rule did pay Swader the $3,000 cap, yet the jury's award reflects the exact dollar amount of Swader's medical bills without this $3,000 payment. We therefore modify the jury's verdict to give Golden Rule the $3,000 credit to which it was entitled. See *Martin v. McIntosh* (1976), 37 Ill. App. 3d 526, 532, 346 N.E.2d 450, 455. See also *In re Estate of Segur* (1972), 5 Ill. App. 3d 459, 462, 283 N.E.2d 76, 78-79.

■ On cross-appeal, Swader argues the court erred in refusing to award him attorney fees considering Golden Rule's unreasonable

and vexatious refusal to settle his claim. The trial court, after hearing all of the evidence and arguments of counsel, ruled the award of attorney fees was not justified in this instance. In light of the totality of the circumstances, we cannot say Golden Rule's denial of liability was not made initially in good faith. We therefore find no abuse of the trial court's discretion in denying attorney fees. *Cf. Keller v. State Farm Insurance Co.* (1989), 180 Ill. App. 3d 539, 554-55, 536 N.E.2d 194, 204; *Hall v. Svea Mutual Insurance Co.* (1986), 143 Ill. App. 3d 809, 811-12, 493 N.E.2d 1102, 1105; *Deverman v. Country Mutual Insurance Co.* (1977), 56 Ill. App. 3d 122, 124-25, 371 N.E.2d 1147, 1149.

For the foregoing reasons, we affirm the judgment of the circuit court of St. Clair County as modified.

Affirmed as modified.

WELCH and CHAPMAN, JJ., concur.