JEFFREY LOOMIS, Plaintiff-Appellee, v. GRANNY'S ROCKER NITE CLUB, Defendant-Appellant.

Fifth District    No. 5—92—0705

Opinion filed September 22, 1993.

Theodore J. Williams, Jr., Gary L. Rutledge, and Andrew B. Mayfield, all of Armstrong, Teasdale, Schlafly & Davis, of St. Louis, Missouri, for appellant.

David Hesi, of Wiseman, Shaikewitz, McGivern, Wahl, Flavin & Hesi, P.C., of Alton, for appellee.

PRESIDING JUSTICE CHAPMAN delivered the opinion of the court:

Soon after Granny's Rocker Nite Club (Granny's Rocker) opened in the mid-1980's, it began having a weekly "fanny" contest, which involves male and female volunteer contestants competing for cash prizes by dancing on the dance floor. The audience is the judge of the contest. While attending the fanny contest on April 4, 1990, plaintiff, Jeffrey Loomis, got into a fight with another patron. During the altercation Loomis' right ear was bitten and torn. Loomis was hospitalized and surgery was performed to repair his ear.

Loomis' claim against Granny's Rocker had two counts, one based on the Illinois Dramshop Act (Ill. Rev. Stat. 1989, ch. 43, par. 135) and one based on negligence. The jury found for the defendant on the dramshop count, but it found that Granny's Rocker was negligent in failing to have adequate security to stop a physical altercation on the nights of the fanny contests when it knew or should have known that

such contests would result in a large and rowdy group of patrons. Granny's Rocker appeals. We affirm.

In order to recover under a negligence theory, a plaintiff must offer evidence which establishes that the defendant owed a duty to the plaintiff, that the defendant breached the duty, and that the breach proximately caused the plaintiff's injuries. (*Ward v. K mart Corp.* (1990), 136 Ill. 2d 132, 140, 554 N.E.2d 223, 226.) Whether a duty exists is a question of law to be determined by the court and depends on whether parties stood in such a relationship to one another that the law imposes an obligation on the defendant to act reasonably for the protection of the plaintiff. (*Gouge v. Central Illinois Public Service Co.* (1991), 144 Ill. 2d 535, 542, 582 N.E.2d 108, 112.) In determining whether a duty exists in a particular case, a court must weigh the foreseeability of the injury, the likelihood of the injury, the magnitude of the burden of guarding against it, and the consequences of placing that burden on the defendant. *Kirk v. Michael Reese Hospital & Medical Center* (1987), 117 Ill. 2d 507, 525, 513 N.E.2d 387, 396.

The testimony at trial was as follows. Bob Rollins, owner and manager of Granny's Rocker, testified that the fanny contest has been a weekly event for six years. When asked what the contestants are permitted to do during the fanny contest, he explained: "[They can do] basically whatever they want to do. They cannot—there is no nudity. We don't allow G-strings or that sort of thing. No total nudity. A guy can take off his shirt. Some people will not take off anything. Some people will take off down to their underwear." Rollins testified that the fanny contest is a promotion "to try to create more business during the weekdays." He testified that on the night of the incident Granny's Rocker employed three bartenders, a front door man, a back door man, a disk jockey, and approximately four security guards. Granny's Rocker employs the same number of people on Friday and Saturday nights, but on Tuesdays and Thursdays there are two less bartenders and two less security personnel.

Jeffrey Loomis testified that he was 19 years old at the time of the incident, which was the first time he had been in Granny's Rocker. Loomis and four of his friends were at Granny's Rocker 1½ hours before the fanny contest, during which time Loomis had a sip of a gin and tonic and a few glasses of beer. He testified that after the winner of the fanny contest was announced, she walked within six feet of him. Loomis testified that everyone in the area was commenting, "We vote for you, number five" and "You're hot." After the girl walked past, Loomis was tapped on the shoulder by an unidentified man who said, "Let my old lady through." Loomis testified that he

tried to calm the man, but the man pushed him and then started punching him in the face. The two men continued fighting, and Loomis' ear was bitten in the altercation.

Scott Toth, a friend of Jeffrey Loomis, testified that on the night of the incident he met with Loomis and three other friends. They drank approximately a half case of beer and then went to Granny's Rocker. Toth testified that there were approximately 200 to 300 people at Granny's Rocker that night. Toth and his friends each paid a $3 admission fee. Once inside the bar, Toth purchased a pitcher of beer. He had three or four cups of beer himself but could not recall whether Loomis drank any beer from the pitcher. Toth testified that he and his friends watched the fanny contest, and after it was over one of the female contestants walked by their table. No one touched the girl, but Loomis commented to her, "Nice job." With that a man came from behind and pushed Loomis. Toth had not noticed the man up until this time and had not seen whether Loomis had had any contact with the man any time earlier that evening. Toth testified that Loomis turned to the man and told him that he was there to have a good time and did not want to start any trouble. With that the man punched Loomis. Loomis tried to tackle or grab the man's arms without swinging at him. The two men began pushing and shoving and knocked over a foosball table. Toth testified that from the time the two began fighting until they knocked over a table, approximately three or four minutes had elapsed, and no one tried to quell the confrontation during that time. Finally, Danny Glavin, one of Toth's friends, grabbed Loomis and took him outside. Toth testified that in addition to the incident between Loomis and the unidentified man, he observed approximately seven other people fighting. He did not recall seeing any security personnel in the vicinity of the fighting.

Greg Toth, another of Loomis' friends, testified that during the fanny contest he and his friends cheered for contestant number five. After the contest she walked past Loomis, and Loomis said something like, "I voted for you." Toth testified that a man approached Loomis and the two started arguing. Loomis tried to calm the man, but the man started throwing punches at him. The two fought for seven to nine minutes until two Granny's Rocker employees started evicting people. Toth testified that he is not certain whether the employees broke up the fight or whether Loomis and the unidentified man simply quit fighting.

Jeffrey Loomis' friend, Jennifer McFall, testified that she was with a girl friend at Granny's Rocker the night of the incident. After the fanny contest she heard names being called and saw someone

punch Danny Glavin. She then turned and saw Jeffrey Loomis thrown against the foosball table and an unidentified man climb on top of him and bite his ear. McFall testified: "I stood there for awhile just shocked, then ran to the back of the bar to grab some help because no one—it took them awhile to get there before I seen [*sic*] anybody actually come up to help the [*sic*] fight. I ran to the back of the bar and I yelled at two of the back bouncers to get some help up there, and that had been two, three, maybe four minutes, the fight had been going on, so I finally ran back there and grabbed somebody." She testified that it was so crowded at Granny's Rocker that night that it took her a while to get back and look for the security personnel. She testified that it took three or four security personnel to stop the fight. McFall further testified that before the incident, she frequented Granny's Rocker approximately two or three times a week. She had seen the fanny contest approximately 10 to 15 times. She opined that the crowd at Granny's Rocker was rowdiest by far on Wednesday nights and that the fanny contest seemed to spawn rowdiness.

Kimberly Ellis, a friend of Jeffrey Loomis, testified that she too was a frequent patron of Granny's Rocker. She testified that compared to the rest of the week, Wednesday nights are "extremely crowded, extremely rough crowd, a lot of drunk people, way too many people in the establishment." Ellis testified that she witnessed spats between patrons, occasional punches, and pushing and shoving on previous Wednesday evenings at Granny's Rocker. She testified that the fanny contest seemed to be the focus of this activity.

Daniel Glavin, another friend of plaintiff's, testified that after the fanny contest one of the contestants walked past them, and Loomis said something like, "We were rooting for you" or "Nice job." Glavin testified that Loomis did not touch the girl. An unidentified man came over to Loomis and said "Leave the girl alone." Loomis put his arm around the man and said, "I don't have a problem with you." The man put his beer down and punched Loomis in the face. Glavin described the fight much as Scott Toth described it. Glavin testified that from the time the first punch was thrown until the time Loomis headed outside approximately five to seven minutes elapsed. During that time security personnel were not involved in the confrontation.

Denzel Whitehead testified that he and a friend were at Granny's Rocker the night of the incident. He watched a contestant from the fanny contest walk past the plaintiff, and the plaintiff put his arm around her. Whitehead testified: "I seen what was going on so I stood up on a chair and told him not to mess with her because this guy over here is going to hurt you, and by then the other guy was already

there and he pushed him, and that's when the other guy grabbed him."

The foregoing review of the record discloses that there was evidence that Wednesday nights at Granny's Rocker are particularly crowded and that a rowdy crowd is attracted to or developed by the fanny contest. The length of the fight was estimated at from five to nine minutes. Kimberly Ellis testified as to the crowded conditions of the establishment. Jennifer McFall confirmed that Granny's Rocker was crowded that night and that it took her some time to run to the opposite end of the establishment in her attempt to get help from security. No evidence was presented as to the placement of security personnel or of any actions taken by personnel once the altercation began. In fact, there was evidence that security never did get involved in stopping the altercation. Consequently, evidence was presented that the altercation was reasonably foreseeable by Granny's Rocker and that defendant could have prevented it or could have at least interfered in the altercation prior to Loomis sustaining the injuries to his ear.

■ A possessor of land who holds it open to the public is under a duty to the members of the public who enter in response to his invitation to protect them against unreasonable risk of physical harm. (Restatement (Second) of Torts §314A (1965); *Hayes v. O'Donnell* (1979), 76 Ill. App. 3d 695, 395 N.E.2d 184; *Smith v. 601 Liquors, Inc.* (1968), 101 Ill. App. 2d 306, 243 N.E.2d 367.) It is our opinion, therefore, that the trial court did not err by finding that defendant owed a duty to protect the plaintiff from assault by a third party.

■ Granny's Rocker also argues that the jury's verdict is against the manifest weight of the evidence. In support of this claim defendant argues that the evidence establishes that it acted reasonably given the circumstances that were known, or should have been known, by the defendant at the time of plaintiff's injury. It is axiomatic that unless a jury verdict is unreasonable, arbitrary, or not supported by the evidence it will not be disturbed on review. (*Swader v. Golden Rule Insurance Co.* (1990), 203 Ill. App. 3d 697, 702, 561 N.E.2d 99, 102; *Young v. City of Centreville* (1988), 169 Ill. App. 3d 166, 178, 523 N.E.2d 621, 628.) Weighing the evidence and the credibility of the witnesses and resolving apparent conflicts are functions of the trier of fact with which we will not interfere. *Swader*, 203 Ill. App. 3d at 702, 561 N.E.2d at 102.

According to the evidence, the fanny contest drew a rowdy crowd. The contest itself spawned occasional punches and pushing and shoving among patrons. The owner and manager of the establishment

testified that the purpose of the contest is to create more business during Wednesday evenings. At times it was so crowded that there was standing room only. The evening of the incident at bar was no exception. One witness testified that there were 200 to 300 people at Granny's Rocker that night. While Granny's Rocker employs the same number of bouncers on Wednesday night as are employed on the weekend, no fanny contest is held on the weekend. The fanny contest itself draws a large and rowdy crowd. Drinking of alcoholic beverages by underage patrons could contribute to the rowdiness. Moreover, evidence was presented that, given the large crowd, access to security personnel was difficult, and security personnel did not even assist in the altercation until after several minutes had passed. Given the evidence, we have not found, and defendant has not cited, any legitimate basis for disturbing the jury's verdict that defendant should be held liable.

For the foregoing reasons, the judgment of the circuit court of Madison County is affirmed.

Affirmed.

MAAG and WELCH, JJ., concur.