DELORES COBB, Plaintiff-Appellant, v. MARTIN IGA AND FROZEN FOOD CENTER, INC., Defendant-Appellee.

Fifth District   No. 5—01—0671

Opinion filed February 10, 2003.

GOLDENHERSH, J., dissenting.

John P. Ewart, of Craig & Craig, of Mattoon, for appellant.

Brien J. O'Brien and Michael D. Ryan, both of Ryan, Bennett, Radloff & O'Brien, of Mattoon, for appellee.

JUSTICE MAAG delivered the opinion of the court:

Delores Cobb (plaintiff) filed a personal-injury action against Martin IGA & Frozen Food Center, Inc. (defendant), in the circuit court of Effingham County. Plaintiff sought compensation for damages she sustained when a young boy ran into her with a grocery cart while she was shopping in defendant's store. Defendant filed a motion for a summary judgment asserting that it had no duty to protect plaintiff from the type of harm she had suffered. The trial court granted the motion and entered a summary judgment in favor of defendant. On appeal, plaintiff contends that the trial court erred in granting the summary judgment because there was a jury question of whether defendant was or was not negligent.

Plaintiff filed a negligence action against defendant for injuries she had sustained while she was a customer in defendant's grocery store. The amended complaint alleged that on August 6, 1997, plaintiff was a customer shopping in defendant's store, that an unsupervised child ran into plaintiff with a shopping cart while she was shopping, that plaintiff suffered serious injuries to her foot and ankle as a result of the incident, and that defendant was negligent and breached its duty to exercise reasonable care to protect its customers under the Premises Liability Act (740 ILCS 130/1 *et seq.* (West 1996)). The

amended complaint further alleged that defendant had been negligent in one or more of the following ways:

"a. Negligently failed to supervise the delivery of shopping carts to customers and other individuals on the premises so as to prevent the use of said carts by children who were inexperienced operators;

b. Negligently failed to supervise the operation of shopping carts by customers and other individuals on the premises so as to prevent the use of said carts by children who were inexperienced operators; [and]

c. negligently failed to supervise the operation of shopping carts by customers and other individuals on the premises so as to prevent the use of said carts by children who were inexperienced operator [*sic*]."

After the trial court resolved a series of motions attacking the sufficiency of the complaint, discovery ensued. During the discovery phase of the case, plaintiff sought and was granted leave to add the following allegation of negligence:

"d. Negligently adopted and followed a policy of permitting young children to operate shopping carts."

Plaintiff and Kenneth Lansing, defendant's general manager, were deposed during the discovery period. A summary of the pertinent portions of the testimony of plaintiff and Mr. Lansing follows.

In her deposition, plaintiff testified that she went to defendant's store on August 6, 1997, to purchase some groceries. While she was shopping, a young boy pushed a shopping cart into her left foot and ankle. Plaintiff testified that she had first noticed the boy in the pickle aisle. He was pushing a cart and running fast toward her. He was not screaming or making any noises. She did not see any adult with or near the boy. Plaintiff changed direction in an attempt to avoid him. Had she followed her regular routine, she would have gone to the deli and then to the meat counter. Instead, she stopped at a display of greeting cards in order to maintain some distance from the boy. Plaintiff explained why she initially was not afraid that she would be harmed: "[The boy] was far enough away and I saw him and he saw me and I thought he had plenty of time to stop, but apparently he was going too fast[;] he couldn't." The boy pushed the cart into plaintiff and knocked her down to the floor. Plaintiff testified that the boy stopped for a few seconds, said that he was sorry, and then ran off. Plaintiff stated that the boy appeared to be between 8 and 10 years old. She did not know him and she did not get his name.

Plaintiff testified that she had been a customer of defendant's store for several years before this incident. She shopped there about once a week. Plaintiff testified that prior to this incident, she had

never seen a young child pushing a shopping cart without adult supervision in defendant's store. She stated that she had not heard anyone complain that defendant did a poor job of policing the use of its shopping carts. Plaintiff stated that she had no information that defendant had any problems with this boy or any other children running around its store with shopping carts. Plaintiff also testified that she had not seen any store employees in the area prior to the incident. She had no information indicating that any employee had seen the boy running with the cart prior to the incident.

Kenneth Lansing was the manager of defendant's Effingham store. In his deposition, Mr. Lansing testified that there was no written policy or document regarding the use of carts within the store, the delivery of carts to customers, or the storage of carts. During their training, employees were instructed to return carts that had been abandoned in the store or were otherwise not in use to a storage area at the front of the store. Mr. Lansing stated that the store did not have an attendant assigned to deliver carts to customers entering the store and that it did not have a surveillance system to monitor the entire store. At the time of the incident, there was a surveillance system for the purpose of monitoring shoplifting in high-risk sections of the store, such as near cigarette displays and health and beauty counters. There was no surveillance in the area where this incident occurred. In a supplemental discovery deposition, Mr. Lansing stated that employees were expected to monitor inappropriate behavior of adults and children. He testified that the store did not have a policy against children using shopping carts. He explained that there are many children who shop for their families in defendant's stores.

Mr. Lansing signed an affidavit that was filed in support of defendant's summary judgment motion. The affidavit states in pertinent part as follows:

"Prior to August 6, 1997, there had never been an incident or accident at any of the Martin's I.G.A. stores involving circumstances where a patron was injured as a result of a fellow patron, child or adult, running into the other person with or without a shopping cart. Also, Martin's I.G.A. had never received a complaint prior to August 6, 1997, that the Martin's I.G.A. employees failed to supervise the delivery of carts to adults or children. With regard to this case, no one, including Delores Cobb, has come forward with any information concerning the identity of the boy who was pushing the cart at the time of the incident. Furthermore, no one, including Delores Cobb, has come forward with any information concerning where the unidentified boy obtained the cart, whether the cart was obtained by his parent or guardian, or the period of time the boy had been pushing the cart prior to the accident."

In its motion for a summary judgment, defendant alleged that plaintiff failed to allege and failed to produce evidence establishing that defendant owed a duty of care under the circumstances of the case. Defendant argued that plaintiff failed to produce any evidence to suggest that it knew or should have known that a young child would negligently or recklessly push a cart into another customer. Defendant also argued that imposing a duty to prohibit children from operating carts in its store would be unduly burdensome.

Following a hearing, the trial court entered an order granting defendant's motion for a summary judgment. In its order, the trial court noted that defendant had filed a motion to dismiss the complaint on the ground that it owed no duty to plaintiff under the circumstances. The court explained that the standard used to assess a motion to dismiss is different from that used to assess a motion for a summary judgment. The court stated that it had denied the motion to dismiss at an earlier stage of the proceedings because "it was conceivable that a set of facts could have been developed under which a duty could have been found to exist with regard to the plaintiff by the defendant." The trial court found that during the time allotted for discovery, plaintiff "totally failed to develop any facts that would suggest that the defendant was placed on notice of either other children between the ages of eight and ten running into customers with shopping carts or the particular minor involved running into customers with shopping carts." The court also found that the imposition of a duty to prohibit all unsupervised children from using shopping carts or, alternatively, to monitor all children pushing shopping carts, as suggested by plaintiff, would create an intolerable burden on defendant.

■ A summary judgment is appropriate when there are no genuine issues of material fact and the movant is entitled to a judgment as a matter of law. 735 ILCS 5/2—1005(c) (West 2000); *Outboard Marine Corp. v. Liberty Mutual Insurance Co.*, 154 Ill. 2d 90, 102, 607 N.E.2d 1204, 1209 (1992). A summary judgment is properly granted when the pleadings, depositions, admissions, and permissible inferences therefrom, construed in the light most favorable to the nonmoving party, so clearly favor the movant that no fair-minded individual could dispute the movant's right to a judgment in his or her favor. *Wysocki v. Bedrosian*, 124 Ill. App. 3d 158, 164, 463 N.E.2d 1339, 1344 (1984). Appellate review of summary judgment rulings is *de novo*. *Outboard Marine Corp.*, 154 Ill. 2d at 102, 607 N.E.2d at 1209.

■ In order to recover under a negligence theory, a plaintiff must offer evidence which establishes that the defendant owed a duty to the plaintiff, that the defendant breached the duty, and that the breach

proximately caused the plaintiff's injuries. *Ward v. K mart Corp.*, 136 Ill. 2d 132, 140, 554 N.E.2d 223, 226 (1990). The existence of a duty and the range of protection of that duty in a particular case are questions of law to be resolved by the court. *Ward*, 136 Ill. 2d at 140, 554 N.E.2d at 226. The resolution of these questions depends on whether the defendant and the plaintiff stood in such a relationship to one another that the law imposed upon the defendant an obligation to act reasonably for the benefit of the plaintiff. *Ward*, 136 Ill. 2d at 140, 554 N.E.2d at 226; *Loomis v. Granny's Rocker Nite Club*, 250 Ill. App. 3d 753, 755, 620 N.E.2d 664, 665-66 (1993). In determining whether a duty exists in a specific case, a court must weigh the foreseeability of the injury, the likelihood of the injury, the magnitude of the burden of guarding against it, and the consequences of placing that burden upon the defendant. *Ziemba v. Mierzwa*, 142 Ill. 2d 42, 47, 566 N.E.2d 1365, 1366-67 (1991).

In the trial court and on appeal, plaintiff has argued that sections 318, 344, and 390 of the Restatement (Second) of Torts (Restatement (Second) of Torts §§ 318, 344, 390 (1965)) support her contention that a jury could find defendant negligent. Each section identifies certain circumstances under which a defendant who is a possessor of land or chattels may be subject to liability for physical harm caused by the conduct of a third party. A series of comments, providing further explanation or clarification of the statement of law, is provided at the end of each section.

■ According to the statement of law in section 390, the supplier of a chattel is subject to liability if the supplier knows or has reason to know that the user, because of his youth, inexperience, or incompetence, is likely to use the chattel in a manner involving an unreasonable risk of physical harm to others. Restatement (Second) of Torts § 390 (1965). Comment *b*, which follows section 390, explains that the supplier "knows or has reason to know" if "the [user] belongs to a class which is notoriously incompetent to use the chattel safely[ ] or lacks the training and experience necessary for such use" or if "the supplier knows that the [user] has on other occasions so acted that the supplier should realize that the chattel is likely to be dangerously used[ ] or that the [user], though otherwise capable of using the chattel safely, has a propensity or fixed purpose to misuse it." Restatement (Second) of Torts § 390, Comment *b*, at 315 (1965).

■ According to the statement of law in section 344, "A possessor of land who holds it open to the public for entry for his business purposes is subject to liability to members of the public while they are upon the land for such a purpose, for physical harm caused by the accidental, negligent, or intentionally harmful acts of third persons or

animals, and by the failure of the possessor to exercise reasonable care to (a) discover that such acts are being done or are likely to be done[ ] or (b) give a warning adequate to enable the visitors to avoid the harm[ ] or otherwise to protect them against it." Restatement (Second) of Torts § 344, at 223-24 (1965). Comment *f* notes that the possessor of land is not an insurer of the visitor's safety and is ordinarily under no duty to exercise any care until he knows or has reason to know that the acts of the third person are occurring or are about to occur. According to comment *f*, a duty may be established if the possessor knows or has reason to know, from past experience, that there is a likelihood of conduct on the part of third persons in general which is likely to endanger the safety of the visitor, or if he should reasonably anticipate careless or criminal conduct by third persons, based on the place or character of his business or his past experience. Restatement (Second) of Torts § 344, Comment *f*, at 225-26 (1965).

■ According to the statement of law in section 318, "If the actor permits a third person to use land or chattels in his possession otherwise than as a servant, he is, if present, under a duty to exercise reasonable care so to control the conduct of the third person as to prevent him from intentionally harming others or from so conducting himself as to create an unreasonable risk of bodily harm to them, if the actor (a) knows or has reason to know that he has the ability to control the third person[ ] and (b) knows or should know of the necessity and opportunity for exercising such control." Restatement (Second) of Torts § 318, at 126-27 (1965). Comment *c* cautions that the actor's duty to control conduct depends on the character of the land or chattel, the use which the licensee makes of it, and the circumstances under which it is used. The comment notes that in cases where the character of the chattel or the manner of its use is of such a character that it is only dangerous under particular conditions or situations, the actor has a duty to exercise vigilance "only if there is a reasonable probability that such a condition or situation will arise." Restatement (Second) of Torts § 318, Comment *c*, at 128 (1965).

It is apparent from the comments following each section discussed above that a defendant must have some notice of a prior incident or prior conduct before the law imposes a duty to protect a plaintiff from the conduct of a third party. The prior incident must be sufficiently similar to put a defendant on notice that there is a reasonable probability that the acts of the third party are likely to cause physical harm to others. Turning to the record before us, we now consider whether defendant had actual knowledge or sufficient notice of previous incidents similar to that involved here that would give rise to a duty to protect plaintiff from the risk of harm posed by the conduct of the minor child.

■ Defendant was the possessor of the premises where plaintiff was injured. Plaintiff had an "invitation" to enter defendant's business to buy groceries, since the store was open to the public. Accordingly, plaintiff's status was that of a business invitee to whom defendant owed a duty of reasonable care. *Anderson v. Woodlawn Shell, Inc.*, 132 Ill. App. 3d 580, 582, 478 N.E.2d 10, 12 (1985). However, that does not make defendant an insurer of its customers' safety. *Anderson*, 132 Ill. App. 3d at 582, 478 N.E.2d at 12. The general duty of reasonable care does not extend to all risks of harm encountered by invitees while on defendant's premises. See *Gonzalez v. Kennedy Mobil Service, Inc.*, 274 Ill. App. 3d 1077, 1084, 654 N.E.2d 624, 628-29 (1995). The duty owed by a possessor of land to a business invitee is not absolute. See *Applebaum v. Jewel Cos.*, 76 Ill. App. 3d 346, 348, 395 N.E.2d 57, 59 (1979). The creation of a legal duty requires more than the possibility of an occurrence. *Anderson*, 132 Ill. App. 3d at 582, 478 N.E.2d at 13; *Gonzalez*, 274 Ill. App. 3d at 1084, 654 N.E.2d at 628-29. " 'No man can be expected to guard against harm from events which are not reasonably to be anticipated at all[ ] or are so unlikely to occur that the risk, although recognizable, would commonly be disregarded.' " *Anderson*, 132 Ill. App. 3d at 583, 478 N.E.2d at 13, quoting W. Prosser, Torts § 31, at 146 (4th ed. 1971).

■ In this case, plaintiff did not present evidence to show that defendant had notice of previous incidents similar to that involved in this case so as to give rise to a duty to protect her from an unsupervised child with a shopping cart. According to the testimony of the store manager, defendant had no record of prior incidents or complaints involving children running recklessly with shopping carts in any of defendant's stores, including the Effingham store. Plaintiff, a regular customer of the Effingham store, testified that she had not witnessed unsupervised children with shopping carts running around the store and that she had not heard anyone complain of such conduct prior to the August 1997 incident. There is no evidence to show that defendant had notice that such incidents were reasonably likely to occur. In order for a plaintiff to establish a reasonable foreseeability for the purpose of proving the existence of a legal duty, it is not sufficient to show that an occurrence was conceivable or merely possible; the occurrence must be "objectively reasonable to expect." *Anderson*, 132 Ill. App. 3d at 583, 478 N.E.2d at 13. In this case, there is no evidence to show that the incident was reasonably foreseeable. Based upon the record, we conclude that defendant had no duty to protect plaintiff from the type of harm she suffered under the circumstances of this case.

We will make only a brief comment regarding the dissent. The dis-

senter's position in this case, if adopted, would be tantamount to the imposition of absolute liability without fault on any landowner or business solely because an injury occurred on premises owned or operated by the landowner or business. Thankfully, the position of the dissent is not the law of this state. The dissenter denies that his position amounts to the imposition of absolute liability. We turn to Shakespeare for our response: "What's in a name? That which we call a rose by any other name would smell as sweet." William Shakespeare, Romeo and Juliet act II, sc. 2.

Accordingly, the judgment of the circuit court of Effingham County is affirmed.

Affirmed.

WELCH, J., concurs.

JUSTICE GOLDENHERSH, dissenting:
I respectfully dissent. Defendant does not dispute that, at the time of the incident, it was the possessor of the premises on which plaintiff was injured. Plaintiff had the implied, if not express, invitation to enter defendant's business to buy groceries. Plaintiff was a business invitee and defendant owed her the duty of exercising reasonable care for her safety. *Anderson v. Woodlawn Shell, Inc.*, 132 Ill. App. 3d 580, 582, 478 N.E.2d 10, 12 (1985). Illinois has adopted section 344 of the Restatement (Second) of Torts, which lends support to plaintiff's claim of negligence. It provides in pertinent part as follows:

"A possessor of land who holds it open to the public for entry for his business purposes is subject to liability to members of the public while they are upon the land for such a purpose, for physical harm caused by the accidental, negligent, or intentionally harmful acts of third persons or animals, and by the failure of the possessor to exercise reasonable care to

(a) discover that such acts are being done or are likely to be done, or

(b) give a warning adequate to enable the visitors to avoid the harm[ ] or otherwise to protect them against it." Restatement (Second) of Torts § 344, at 223-24 (1965).

The comments to section 344 contain the following explanation:

"*f. Duty to police premises.* Since the possessor is not an insurer of the visitor's safety, he is ordinarily under no duty to exercise any care until he knows or has reason to know that the acts of the third person are occurring[ ] or are about to occur. He may, however, know or have reason to know, from past experience, that there is a likelihood of conduct on the part of third persons in general which

is likely to endanger the safety of the visitor, even though he has no reason to expect it on the part of any particular individual. If the place or character of his business, or his past experience, is such that he should reasonably anticipate careless or criminal conduct on the part of third persons, either generally or at some particular time, he may be under a duty to take precautions against it[ ] and to provide a reasonably sufficient number of servants to afford a reasonable protection." Restatement (Second) of Torts § 344, Comment *f*, at 225-26 (1965).

Accordingly, it has been recognized that the owner of business property has a duty to exercise reasonable care to keep the property reasonably safe for the use of the customer and to discover defects and dangerous conditions existing on the premises and to either correct those dangers or give sufficient warning of them.

Section 318 of the Restatement (Second) of Torts also lends support to plaintiff's claim of negligence against defendant. It provides in pertinent part as follows:

"§ 318. Duty of Possessor of Land or Chattels to Control Conduct of Licensee

If the actor permits a third person to use land or chattels in his possession otherwise than as a servant, he is, if present, under a duty to exercise reasonable care so to control the conduct of the third person as to prevent him from intentionally harming others or from so conducting himself as to create an unreasonable risk of bodily harm to them, if the actor

(a) knows or has reason to know that he has the ability to control the third person, and

(b) knows or should know of the necessity and opportunity for exercising such control." Restatement (Second) of Torts § 318, at 126-27 (1965).

In the instant case, defendant owns a supermarket that sells food and additional merchandise. To increase sales, defendant provides customers with shopping carts. Plaintiff, age 68, was shopping in or near the pickle aisle when she noticed an unaccompanied, unsupervised boy, between the ages of 8 and 10, running down the aisle with a cart. Plaintiff altered her normal route through the store in order to avoid the boy; however, the boy was going too fast and collided with plaintiff, causing injury to her ankle. While I agree that defendant was not the insurer of its customers' safety (see *Anderson*, 132 Ill. App. 3d at 582, 478 N.E.2d at 12) and that this situation does not call for the imposition of an absolute liability duty, defendant, as the possessor of the carts in its store, had the duty to exercise reasonable care to control the conduct of third persons, not only when it knew of the necessity of doing so but also when it should have known that it had the ability to control third persons.

To establish a reasonable foreseeability of an injury, a plaintiff must show more than that the defendant could have foreseen that the event was conceivable or merely possible; rather, a plaintiff must show that the event was objectively reasonable to expect. *Gonzalez v. Kennedy Mobil Service, Inc.*, 274 Ill. App. 3d 1077, 1084, 654 N.E.2d 624, 629 (1995). It is objectively reasonable to expect that an unsupervised child operating a shopping cart could run into a customer and cause an injury. Here, it is clear from the following deposition testimony of Mr. Lansing that it was the policy of the store to allow children to operate shopping carts and that no policies were in place to monitor this potentially dangerous situation:

"Q. [Plaintiff's attorney:] Now if you were to implement a policy as to the current employees who worked in the store or just the regular employees who worked in the store to monitor [the use of shopping carts by children] while they are in the store[,] you would not have to add any additional employees, would you?

A. We have in the past made every effort to provide a safe[,] convenient shopping area. We do that with all employees in all departments[,] whether they work in the floor or the back area.

Q. What I'm saying is[,] if you were to add to a policy statement to be announced to the employees who are employed for other purposes simply to monitor [the use of shopping carts by children,] you wouldn't have to add anybody additionally, would you?

A. That is expected at this point in time. Even though it is not a written policy[,] that is expected.

Q. Expected what?

A. That is expected behavior of all employees.

Q. What is expected behavior?

A. That they monitor behaviors within the store to make sure it is appropriate, whether it be children or adults.

Q. But there was never any announcement to any of the employees that children were not to operate carts, was there?

A. No, it is not. We have children who shop for their families. That would inconvenience those families.

Q. Fine, thank you. So it would be correct to say that the current policy of the store is to permit children to operate carts, would that be correct?

A. Yes, it is."

While defendant claimed that this event was not reasonably foreseeable because no one had ever come forward with a similar complaint, I do not agree that the general duty of reasonable care did not extend to the risk involved in the instant case.

In the instant case, defendant should have foreseen that such an event might occur, but it did nothing to prevent it. No signs were

posted anywhere in the store warning customers about unsupervised children operating shopping carts. Also, our focus is a minor's behavior, not an adult's behavior. It was defendant's policy to allow unsupervised children to operate shopping carts. Defendant insists that in order to make sure that this type of accident did not occur, it would be forced to post a myriad of additional workers throughout its store, which would create an intolerable burden. However, contrary to defendant's assertions, it is probable that this accident could have been avoided by much less burdensome means, such as notice to patrons that children are not allowed to operate a shopping cart without adult supervision and some awareness of this problem by defendant's employees.

Accordingly, I respectfully dissent from the majority's opinion.