ALAN W. McCARTHY, Plaintiff-Appellant, v. JOHN A. JOHNSON, JR., et al., Defendants-Appellees.

First District (5th Division)  No. 82—2538

Opinion filed December 30, 1983.—Rehearing denied March 19, 1984.

Edmund J. Burke, of Hoffman, Burke and Bozick, of Chicago (Norman E. Wilson, of counsel), for appellant.

George C. Moravcik, of St. Charles, for appellees.

PRESIDING JUSTICE WILSON delivered the opinion of the court:

This is an appeal from the entry of summary judgment in a suit to determine shareholder interest. In anticipation of the dissolution of Federal Asphalt Corporation (Federal), plaintiff sought a declaratory judgment to determine his shareholder interest. It was his position

that he owned a 20% interest in the corporation. In response, defendants, the remaining Federal shareholders, filed a motion for summary judgment, requesting the trial court to find that, pursuant to the terms of an option letter agreement, plaintiff had only a 2% shareholder interest in Federal. The trial court granted defendants' motion. The sole issue on appeal is whether genuine issues of fact exist so as to preclude the grant of summary judgment. For the reasons that follow, we affirm the decision of the trial court.

The undisputed facts disclose that at the time of its incorporation on May 17, 1971, Federal had a stated capital of $10,000, which represented the amount paid by defendants for 10,000 shares of Federal common stock. At that time, no funds had been distributed to paid-in surplus.

On May 18, 1971, each defendant executed an option letter agreement with plaintiff which offered him the option to purchase 1,000 shares of Federal stock from each defendant, 500 to be purchased from each by May 18, 1972, and the balance to be purchased by May 18, 1973, at the same price paid by defendants for their shares, "that is, $1.00 per share." The following purchase price contingency clause was included in each agreement:

> "In the event that, subsequent to the date hereof, there is any change in the shares of Federal Asphalt which are the subject of the Option by reason of a reorganization, recapitalization, merger, consolidation or split-up, combination or exchange of shares or similar procedure, or in the event of a stock dividend, the number of Federal Asphalt shares (or the securities into which such shares may have theretofore been changed) subject to the Option and the Option purchase price per share shall be equitably adjusted."

On June 14, 1971, Federal filed a "Report of Issuance of Shares and Increases in Stated Capital and Paid-in Surplus" with the Illinois Secretary of State which reflected the addition of $90,000 to paid-in surplus, half of which was contributed by each defendant. No additional shares were issued; the class of stock remained the same; and the par value remained at $1 per share. Subsequently, in May 1972 and May 1973, plaintiff timely exercised his options to purchase 2,000 shares from the defendants at a purchase price of $1 per share and was issued stock certificates indicating his ownership of 2,000 shares of Federal stock, or 20% of the 10,000 issued and outstanding shares.

In 1979, Federal's assets were sold and the proceeds of the sale were deposited in a bank account pending resolution of the controversy regarding plaintiff's rights and legal interest in the paid-in sur-

plus amount of $90,000. In support of his position that he had a 20% shareholder interest, plaintiff alleged, *inter alia*, that: (1) he was the registered owner of 2,000 shares of Federal common stock; (2) the $90,000 added to paid-in surplus in 1971 by defendants did not represent a loan or a separate stock classification; and (3) he timely exercised his stock options pursuant to the provisions of the stock option agreements. Further, plaintiff argued that at no time during the six-year period between his purchase of the shares and the sale of Federal's assets did defendants request additional payment from him.

In response, defendants filed a motion for summary judgment asking the court to find, as a matter of law, that plaintiff owned a 2% interest in Federal and was entitled to only 2% of the net proceeds from the sale of its assets. In this regard, defendants argued that their contributions of $45,000 each to paid-in surplus in June 1971, effectuated a recapitalization which triggered the purchase price contingency clause in the option agreements and effectively increased the purchase price of their shares from $1 to $10. They predicated the price increase argument on the fact that each defendant contributed a total of $50,000 to the corporation and owned 5,000 shares. Thus, because the option agreements unambiguously state that plaintiff's purchase price is to be the same as that of defendants, and plaintiff paid only one-tenth of the price paid by defendants, plaintiff owned only a 2% interest in the corporation.

In granting defendant's motion for summary judgment, the trial court stated:

"[Plaintiff] is bound by the terms and conditions of the option agreement, which contains a specific paragraph relating to a change in the capitalization of the corporation, and that to the extent that he received shares subsequent to the stock option and subsequent to the capitalization any amounts which he may receive from a sale or distribution of the stock *** would be diminished by the sum of $9.00 per share."

Accordingly, the court ruled that plaintiff's 200 shares of Federal stock were subject to a set-off of $9 per share or a total of $18,000, payable to defendants. Thereafter, upon denial of plaintiff's motion to reconsider, the court further found that the option agreements were plain and unambiguous on their face.

OPINION

On appeal, plaintiff asserts that the pleadings, depositions, affidavits and exhibits clearly show that there are issues of material fact which preclude the granting of a summary judgment. We disagree.

■ In determining the propriety of the entry of a summary judgment, we take cognizance of the well-settled principle of law that the purpose of a summary judgment is not to try an issue of fact, rather it is to determine whether a genuine issue as to a material fact exists. (*McHenry Sand & Gravel, Inc. v. Rueck* (1975), 28 Ill. App. 3d 460, 461, 328 N.E.2d 679.) Pursuant to section 2—1005(c) of the Code of Civil Procedure (Ill. Rev. Stat. 1981, ch. 110, par. 2—1005(c)), summary judgment "shall be rendered without delay if the pleadings, depositions, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." In this regard, the opponent may rely upon reasonable inferences drawn from the materials considered on the motion. (*Duffy v. Midlothian Country Club* (1980), 92 Ill. App. 3d 193, 197, 415 N.E.2d 1099.) Because summary judgment is a drastic remedy, the trial court must construe the matters before it most strictly against the moving party and most liberally in favor of the opposing party (92 Ill. App. 3d 193, 197), and grant summary judgment only when the right of the movant thereto is clear and free from doubt. *Sielski v. Tioga Homes, Inc.* (1978), 62 Ill. App. 3d 340, 342, 379 N.E.2d 336.

■ In the present case, it is undisputed that defendants contributed $90,000 to the paid-in surplus of Federal. Pursuant to section 2.12 of the Business Corporation Act (Ill. Rev. Stat. 1981, ch. 32, par. 157.2—12), "paid-in surplus" is defined as "all that part of the consideration received by the corporation for, or on account of, all shares issued which does not constitute stated capital *** whether such paid-in surplus has been heretofore or is or hereafter created by (a) the receipt by the corporation for, or on account of, the issuance of shares having a par value of consideration in excess of the par value of such shares or (b) the allocation of any part of the consideration received by the corporation for, or on account of, the issuance of shares in a manner permitted by law ***." Thus, as a matter of law, defendants' contributions to paid-in surplus constituted consideration paid for their shares, effectively increasing their purchase price from $1 to $10 per share. Therefore, notwithstanding the parenthetical "that is, $1.00 per share" which immediately follows the purchase price provision in the agreement, plaintiff's obligation to pay $10 per share arose from the purchase price provision itself which states that he must pay the same price for his shares that defendants paid for theirs. Contrary to plaintiff's position, the parenthetical does not negate the price increase. At the time the agreement was executed, the purchase price was indeed $1 per share. However, changes in the capital struc-

ture of the corporation, anticipated by the purchase price contingency clause, rendered the parenthetical price designation obsolete.

Moreover, an analysis of the option agreement's purchase price contingency clause further supports the trial court's ruling. Pursuant to this clause, the option purchase price would be adjusted when a change in the shares occurred as a result of any one of eight enumerated events: reorganization, recapitalization, merger, consolidation, split-up, combination of shares, exchange of shares or a similar procedure. Defendants take the position that their contributions to paid-in surplus constituted recapitalization, which, by definition, effectuated a change in the value of shares. Therefore, an equitable price adjustment was necessary. In support of this argument, defendants cite, *inter alia, United Gas Improvement Co. v. Commissioner of Internal Revenue* (3d Cir. 1944), 142 F.2d 216, which defines "recapitalization" as "an arrangement whereby the stock, bonds or other securities of a corporation are readjusted as to amount, income or priority." (142 F.2d 216, 218.) In response, plaintiff argues that "there was no reorganization, recapitalization, merger, consolidation, split-up or exchange of shares which would result in a price adjustment per share \*\*\*," and characterizes defendants' citations in support of their definition of "recapitalization" as "inapplicable" in that these cases concerned Federal tax laws. This is the extent of plaintiff's argument regarding the pivotal question as to whether recapitalization occurred, an argument totally void of any citation to supporting authority. Accordingly, we deem plaintiff's contention that recapitalization did not occur waived (*Hillblom v. Ivancsits* (1979), 76 Ill. App. 3d 306, 312, 395 N.E.2d 119), and concur with defendants' position that the increased consideration paid by defendants for their shares, which increased the value of the shares, constituted a change in shares by reason of a recapitalization.

Plaintiff further argues that the conflicting intent of the parties with respect to the purchase price of the shares presents a question as to a material fact, and, thus, precludes the propriety of a summary judgment. In presenting this argument, plaintiff overlooks the fact that before a court can look to the intent of the parties to a contract, the terms of that contract or agreement must be found to be ambiguous. (*Susmano v. Associated Internists of Chicago, Ltd.* (1981), 97 Ill. App. 3d 215, 220-21, 422 N.E.2d 879.) In the present case, the trial court expressly found that the option agreement was clear and unambiguous on its face. On appeal, the closest plaintiff comes to refuting this finding is his argument that "any ambiguity as to the amount paid for the shares in question pursuant to the terms of the option

agreement is a material fact issue which should be triable and not a question of law." Contrary to plaintiff's position, however, language is not rendered ambiguous simply because parties do not agree upon its meaning. (*Harlem-Irving Realty, Inc. v. Alesi* (1981), 99 Ill. App. 3d 932, 936, 425 N.E.2d 1354.) Accordingly, we conclude that, based on the facts before it, the trial court properly determined that, as a matter of law, a change of shares occurred by recapitalization, necessitating an equitable adjustment of the option purchase price.

Therefore, we affirm the order of the circuit court of Cook County granting defendant's motion for summary judgment.

Affirmed.

SULLIVAN and MEJDA, JJ., concur.