JAMES SHORTALL, Plaintiff-Appellant, v. HAWKEYE'S BAR AND GRILL *et al.*, Defendants-Appellees.

First District (1st Division)   No. 1—95—1350

Opinion filed September 9, 1996.

WOLFSON, J., dissenting.

Kevin M. Forde, Ltd., of Chicago (Kevin M. Forde and Mary Anne Mason, of counsel), for appellant.

Jerome G. McSherry & Associates, of Chicago (James L. McKnight, of counsel), for appellees.

JUSTICE BUCKLEY delivered the opinion of the court:

Plaintiff, James Shortall, brought an action in the circuit court of Cook County to recover for personal injuries sustained in a fight that occurred outside Hawkeye's Bar and Grill (Hawkeye's). Counts I through III of the complaint were brought against Hawkeye's and its

owner, Edward Claussen (defendants), alleging negligence, willful and wanton conduct, and premises liability. Counts IV and V were brought against Louis Rodriguez, alleging battery and willful and wanton conduct. The trial court granted summary judgment in favor of Hawkeye's and Claussen; plaintiff's claims against Rodriguez remain pending below. On appeal, plaintiff contends that the trial court erred in finding, as a matter of law, that defendants owed no duty to plaintiff to take action to prevent a criminal attack by a third party because plaintiff had left the tavern.

At approximately 8 p.m. on April 12, 1991, plaintiff went to Hawkeye's at 1458 West Taylor Street in Chicago with a group of friends. At about 1:40 a.m. on April 13, the bartender announced "last call," and Patricia Wald, a friend of plaintiff, approached the bar to get a drink. While she was waiting to be served, plaintiff noticed that three men sitting at the bar were "hassling" and "grabbing" her. Plaintiff approached Wald and asked her if she wanted to leave. One of the men at the bar told plaintiff to "take a hike," and plaintiff told them to "forget about it." Plaintiff stated in his deposition that the bartender heard the exchange. When Wald received her drink, she and plaintiff returned to their table.

A few minutes later, plaintiff was standing next to his table with his back towards the bar. The three men who had been harassing Wald walked behind plaintiff, and one of them threw an elbow into his back, knocking him off balance into the table. Plaintiff got up and turned around. One of the men asked plaintiff if he wanted to "take it outside." Plaintiff said he did not want to go outside with them, but if they wanted to wait, he was going to have to leave some time. Then the three men left the tavern.

A few minutes later, plaintiff, Wald, and two other individuals decided to leave and began walking toward the door. Wald and the others stopped to talk to someone, and plaintiff went outside by himself. Plaintiff saw the three men with whom he had bickered, but he started walking towards his car, which was about 60 feet away on Taylor Street. He took a couple of steps, and the men approached him. Plaintiff testified that the three men were standing directly in front of a Hawkeye's window, and the bouncer was inside looking out at them. Plaintiff and one of the men exchanged punches and began wrestling. The bar "cleared out," and the other patrons watched the rest of the fight. A short time later, one of the other men also challenged plaintiff, but plaintiff declined.

As plaintiff was about to walk away, a woman who had been inside the bar yelled at him to leave her boy friend alone and smashed a beer bottle over his head. As plaintiff stood looking at the woman,

another man punched him in the mouth. The fight escalated to include numerous people who had exited the bar, including Louis Rodriguez. Rodriguez approached plaintiff from behind with a knife drawn and stabbed him in the neck, back, chest, and arm.

Plaintiff stated that the entire incident outside the bar lasted about 15 minutes and that Hawkeye's employees were watching out the window. Plaintiff stated that no one called the police, and none of the bouncers attempted to stop the fight. He also claimed that after the fight began, Claussen ushered the other patrons out of the bar, which caused the fight to escalate. After being stabbed, plaintiff left the scene and drove himself to the hospital where he received over 200 stitches.

Claussen stated in his deposition that he did not witness any of the fight, but that he called the police because of the number of people congregated outside the bar. Furthermore, none of the fight outside the bar occurred on property owned or controlled by Hawkeye's.

Defendants filed a motion for summary judgment. The court held that defendants owed plaintiff no duty because the incident took place outside the premises of the tavern and Hawkeye's employees had no knowledge of the initial altercation occurring in the bar. Therefore, the court held that the duty of an owner-occupier to prevent attacks on invitees by third parties was not applicable in this case. The court granted summary judgment in favor of defendants, and plaintiff filed a timely notice of appeal.

## DISCUSSION

■ In examining an order granting summary judgment, the appellate court must conduct a *de novo* review. *Outboard Marine Corp. v. Liberty Mutual Insurance Co.*, 154 Ill. 2d 90, 102, 607 N.E.2d 1204, 1209 (1992). Summary judgment is appropriate where there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law. *Outboard Marine Corp.*, 154 Ill. 2d at 102, 607 N.E.2d at 1209. However, it is a drastic measure that should not be granted if the movant's right to judgment is unclear or where reasonable people could draw divergent inferences from undisputed facts. *Outboard Marine Corp.*, 154 Ill. 2d at 102, 607 N.E.2d at 1209.

■ Plaintiff argues that the trial court erred in finding that once plaintiff left the tavern, defendants no longer owed him any duty. Generally, Illinois imposes no duty to protect others from the criminal acts of third parties unless (1) a special relationship exists between the parties, and (2) the criminal attack was reasonably foreseeable. *Jackson v. Shell Oil Co.*, 272 Ill. App. 3d 542, 547, 650 N.E.2d

652, 655 (1995). Under Illinois law, a special relationship exists between an owner of land and an invitee who enters the premises for the purpose of conducting business. *Loomis v. Granny's Rocker Nite Club*, 250 Ill. App. 3d 753, 758, 620 N.E.2d 664, 668 (1993). A criminal attack by a third person is reasonably foreseeable when the circumstances are such as to put a reasonably prudent person on notice of the probability of an attack or when a serious physical altercation has already begun. *Lucht v. Stage 2, Inc.*, 239 Ill. App. 3d 679, 686, 606 N.E.2d 750, 755 (1992).

It is undisputed that plaintiff went to Hawkeye's at about 8 p.m. on April 12, 1991, and left shortly before 2 a.m. on April 13. The altercation between plaintiff and the three men who plaintiff claimed were harassing Wald began inside the bar. The fight and the stabbing that caused plaintiff's injuries occurred on the sidewalk and street outside the front door after plaintiff had exited the bar.

In *Getson v. Edifice Lounge, Inc.*, 117 Ill. App. 3d 707, 453 N.E.2d 131 (1983), a bar owner allowed three members of a motorcycle gang called the "Outlaws" into the bar. At least one gang member was wearing a knife on his belt and another was wearing a jacket with "Outlaws" written on the back. The owner of the tavern did not ask that the knife be removed, but he did ask that the jacket be removed because he believed the display of gang insignia might create a disturbance. Later, the plaintiff bumped into one of the gang members and exchanged heated words in the foyer on his way outside. At least two gang members followed the plaintiff outside into the street, and one of them stabbed him in the side and chest. Once he became aware of the altercation, the tavern owner instructed the doorman not to allow anyone in or out of the bar and called the police. The entire incident lasted between 30 seconds and 1 minute. *Getson*, 117 Ill. App. 3d at 709-10, 453 N.E.2d at 133.

The court found that when it became apparent to the tavern owner that a fight had developed outside the bar, he had a duty to take reasonable steps to protect his invitees. *Getson*, 117 Ill. App. 3d at 712-13, 453 N.E.2d at 135. The court also found, however, that the owner did not breach this duty because he acted reasonably in preventing anyone from entering or exiting the tavern and in calling the police.

■ Here, the altercation between plaintiff and the three men harassing Wald involved a short exchange of words and a push in the back, which escalated to a fistfight outside. Defendants claim, however, that a criminal attack was not foreseeable to them because neither Claussen nor any employee of the tavern was aware of the developing altercation. Plaintiff, on the other hand, claims that em-

ployees witnessed some of the preliminary incident occurring inside and that Claussen and a bouncer knew about the fight as it erupted outside. For purposes of a motion for summary judgment, we must resolve this factual dispute in favor of plaintiff. *McCarthy v. Johnson,* 122 Ill. App. 3d 104, 107, 460 N.E.2d 762, 765 (1983). Therefore, as in *Getson,* a criminal act was reasonably foreseeable once the fight began outside the bar.

Defendants claim that even if the fight was apparent or reasonably foreseeable, they owed plaintiff no duty at the time the injury occurred because he had left the tavern. Defendants rely mainly on *Badillo v. DeVivo,* 161 Ill. App. 3d 596, 515 N.E.2d 681 (1987), in which this court held that there is no "Illinois authority which would require a tavern owner to protect its invitees from foreseeable dangers caused by third persons off the tavern's premises." *Badillo,* 161 Ill. App. 3d at 598, 515 N.E.2d at 683. The court noted that in cases where the tavern operator has been held liable, the injury occurred on the premises or in an adjacent parking lot. *Badillo,* 161 Ill. App. 3d at 598, 515 N.E.2d at 683. In *Badillo,* however, the assault occurred half a block away, and the court held that the tavern operator was not obligated to escort the plaintiff to safety after she left the proximity of the bar. *Badillo,* 161 Ill. App. 3d at 598, 515 N.E.2d at 683.

The circumstances of this case are analogous to cases where the tavern owner's duty has been extended to disturbances arising in the parking lot. *Getson,* 117 Ill. App. 3d at 709-13, 453 N.E.2d at 133-35; *cf. Yangas v. Charlie Club, Inc.,* 113 Ill. App. 3d 398, 402-03, 477 N.E.2d 484, 488 (1983) (holding that duty on tavern owner extends to parking lot if it was reasonably foreseeable that an assault might occur there). The fight in this case lasted 15 minutes and occurred directly outside the front door and window of the tavern. Plaintiff claims that Claussen was aware of both the argument inside and the fight outside. Furthermore, plaintiff claims that bouncers inside the bar were watching the fight through the window. Also, according to plaintiff, people joined the fight as Claussen ushered them out, causing the fight to become even bigger. Again, Claussen denies many of these allegations, but this dispute merely creates a genuine issue of material fact.

■ We find that tavern owners may not avoid application of the duty to act to protect invitees from criminal attack by third parties simply because the disturbance giving rise to the duty occurs just out the front door, especially where the owner contributes to the altercation by sending patrons out into it. Since this dispute began in the bar, a challenge was extended to "take it outside," and a brawl

developed just outside the front door and continued for 15 minutes while Claussen or his employees watched out the window, Claussen was under the same duty as if the fight had occurred inside the bar.

For the foregoing reasons, the trial court's order granting summary judgment in favor of defendants is reversed, and the matter is remanded for proceedings consistent with this opinion.

Reversed and remanded.

CAMPBELL, P.J., concurs.

JUSTICE WOLFSON, dissenting:

I respectfully dissent.

It is true that a tavern operator has a duty to take reasonable action to protect its invitees from foreseeable dangers caused by third persons. *St. Phillips v. O'Donnell*, 137 Ill. App. 3d 639, 484 N.E.2d 1209 (1985). But, as we have held, "In those cases where such a duty has been imposed, however, the injurious act occurred on the defendant's premises or in a parking lot owned or operated by the defendant." *Badillo v. DeVivo*, 161 Ill. App. 3d 596, 598, 515 N.E.2d 681 (1987).

Here, the plaintiff was stabbed by Rodriguez while the two men were on the public sidewalk. Rodriguez had not been part of whatever altercation had taken place inside the tavern. No one in the tavern requested or demanded that the plaintiff leave. The plaintiff was stabbed about 15 minutes after he left the tavern.

I do not understand a business operator's duty to protect a customer to extend to the public sidewalks or streets. Until today, at least, no court in Illinois has so held. I believe the property line distinction is reasonable and sensible. The owner's duty is to keep his premises reasonably safe for use of invitees and licensees. Expanding it to a public sidewalk creates an unreasonable and unpredictable burden on the operator. I would affirm the grant of summary judgment.