2024 IL App (1st) 230755

SECOND DIVISION
October 8, 2024

No. 1-23-0755
_____

IN THE
APPELLATE COURT OF ILLINOIS
FIRST JUDICIAL DISTRICT
_____

| | | |
|---|---|---|
| SHACONTA FOX, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellant, | ) | Cook County. |
| | ) | |
| v. | ) | |
| | ) | |
| FOOD AND DRINK CHICAGO, INC., d/b/a Drinkhaus | ) | |
| Bar & Grill, and ADEMUYIWA "MICHAEL" OGUNDEYI, | ) | |
| | ) | No. 20L11127 |
| Defendants | ) | |
| | ) | |
| (Food and Drink Chicago, Inc., d/b/a Drinkhaus | ) | |
| Bar & Grill, Defendant-Appellee). | ) | Honorable |
| | ) | Daniel A. Trevino, |
| | ) | Judge Presiding. |

_____

JUSTICE McBRIDE delivered the judgment of the court, with opinion.
Justices Howse and Ellis concurred in the judgment and opinion.

**OPINION**

¶ 1    Plaintiff, Shaconta Fox, filed a lawsuit against defendants Ademuyiwa "Michael" Ogundeyi and Food and Drink Chicago, Inc., d/b/a the DrinkHaus Bar (DrinkHaus) for injuries sustained after she was allegedly struck by Ogundeyi outside the Chicago bar owned and operated by DrinkHaus. The trial court granted summary judgment for DrinkHaus, finding that plaintiff

could not establish that the alleged criminal action by Ogundeyi was reasonably foreseeable.[1] In this appeal, plaintiff contends that the trial court erred in granting summary judgment to DrinkHaus.

¶ 2    The record shows that plaintiff filed an initial complaint in this action on October 19, 2020, and an amended complaint thereafter, on December 16, 2020. Plaintiff alleged that in the late evening and early morning hours of October 26 and 27, 2018, she was a patron at the DrinkHaus bar in Chicago. She further alleged that another patron, Ogundeyi, was involved in an altercation inside the bar, and after leaving the bar, Ogundeyi "laid in wait" outside of the premises for plaintiff and her party. After plaintiff exited the premises, Ogundeyi engaged in an altercation with a member of plaintiff's party, and plaintiff was struck in the eye by Ogundeyi, suffering serious injuries. Plaintiff alleged that, based on Ogundeyi's conduct, it was reasonably foreseeable to DrinkHaus that he would cause serious harm to plaintiff and that DrinkHaus was negligent in, among other things, "fail[ing] to respond to the threatening conduct of" Ogundeyi; "fail[ing] to respond to the initial altercation"; "fail[ing] to respond to" Ogundeyi "as he laid in wait for [plaintiff]'s party"; and "fail[ing] to intercede on [plaintiff]'s behalf in response to the threats of physical violence."

¶ 3    During discovery, the parties conducted several depositions, including those of plaintiff, Ogundeyi, members of their respective parties on the relevant evening, and Ralph Johnson, the DrinkHaus bar manager.

¶ 4    Those depositions generally established that plaintiff arrived to DrinkHaus in the late evening of October 26, 2018, along with her sister, Daja Fox; her brother, Mack Curtis; and

---

[1]Plaintiff's lawsuit against Ogundeyi remained pending in the trial court after entry of summary judgment for DrinkHaus, and Ogundeyi is not a party to this appeal.

Curtis's then-fiancée and current wife, Sharina DuPleiss (n/k/a Sharina Curtis). At some point, DuPleiss observed Ogundeyi, who she recognized as the husband of one of her friends, Damora Harris. DuPleiss believed Ogundeyi was flirting with another woman at the bar, and she contacted Harris, either in a phone call or by text message, to inform her that Ogundeyi was talking with another woman.

¶ 5    About 20 minutes thereafter, just after 1 a.m., plaintiff and her party noticed a commotion break out in the bar area, and security got involved. Curtis described the scene as "chaos," and he wanted to make sure the fight did not spill over into the area where plaintiff's group sat. Plaintiff remembered the DJ speaking over the intercom to try to calm down the crowd. Although neither plaintiff nor any of the rest of her party saw Ogundeyi or Harris at that time, they later came to understand that the commotion they witnessed involved Ogundeyi and Harris. DuPleiss testified that Harris called her immediately after Harris left the bar. Harris told DuPleiss that she came to the bar to "call [Ogundeyi] out," that she fought and argued with him at the bar, and that security had escorted them out.

¶ 6    Plaintiff testified that DrinkHaus started closing for the night around 1:40 a.m. There was only one exit, and DrinkHaus employees directed patrons to leave through that exit. As plaintiff and her group left the premises, plaintiff saw one security person at an inside door to the foyer area and two security guards at the outside door.

¶ 7    As plaintiff walked across the street toward her car, she noticed that DuPleiss was no longer with her. Plaintiff turned and saw DuPleiss engaged in a "verbal exchange" with Ogundeyi, just a few feet from the front door to DrinkHaus. DuPleiss testified that as they exited the bar, Ogundeyi walked up to DuPleiss and stopped her. DuPleiss testified that it appeared that Ogundeyi was outside waiting for her, and Ogundeyi began "yelling and putting his hands all in [her] face."

3

DuPleiss testified that she felt "trapped" and was scared that Ogundeyi and his friends were going to "jump" her. Patrons were still leaving through the front door, and security was still outside the door making sure people were exiting. DuPleiss turned to the security guard, who was standing a few feet away, and asked for help. The security guard did not do anything, and was "just looking like *** he didn't care."

¶ 8      After not receiving help from the security guard, DuPleiss called out for help from Curtis. Plaintiff saw Ogundeyi raise his right hand or arm toward DuPleiss, and Curtis ran to defend DuPleiss. Curtis recalled Ogundeyi using his right arm to grab DuPleiss's arm in an "aggressive posture," describing him as having her arm in a "vice grip[ ]." When Curtis got to DuPleiss and Ogundeyi, he was surrounded by four or five other men, who began punching Curtis. When the fight began, Curtis described it as "raining punches."

¶ 9      Plaintiff testified that she and her sister, Daja, rushed over to help their brother. Plaintiff then saw Ogundeyi punch Daja one time, with a closed fist. As plaintiff tried to get Ogundeyi away from her sister, Ogundeyi turned and struck plaintiff in the left eye with his right fist. During this time, no DrinkHaus security guard or other employee ever came to their assistance or tried to intervene. Plaintiff noticed the security guard standing right outside the door remained there the entire time, in close proximity to the fight. Curtis also noted DrinkHaus security remained standing there just to the right of the door, "just chilling, just watching us." Curtis believed security had time to intervene because they were watching Ogundeyi "tell [DuPleiss] off," before punches were thrown. Curtis testified that, during the altercation, the guard outside the door told them, "[y]ou guys better move that s*** across the street. Like you all need to move that." Curtis testified that security did not engage, did not alert police, did not call 911, even though his group was "getting our a*** kicked pretty much." Curtis testified that he could "clearly" see that the security guard

was carrying a gun. Curtis believed that Ogundeyi must have known the security guards because they did not do anything after Ogundeyi grabbed DuPleiss's arm. DuPleiss testified that the DrinkHaus security guard remained standing outside, about two feet away from the fight, doing nothing. After the fight, Ogundeyi and his group "scattered," getting into Ogundeyi's car and driving away.

¶ 10    Plaintiff further testified to her injuries and the medical treatment required resulting from the punch to her eye, including that she continues to suffer from partial blindness.

¶ 11    Johnson testified that he was the "assistant manager/bar manager" at DrinkHaus, and he was working the night of the incident. That night, Johnson and another bartender overheard a woman say that her friend's husband was at the bar with another woman, and that she was going to call the wife to tell her. About 20 to 30 minutes later, Harris arrived. At that point, security was no longer letting any new guests into the bar because it was near closing time. Harris, however, pushed her way through the bouncers to confront Ogundeyi. Johnson watched from the bar as the woman confronted Ogundeyi. Johnson could not hear what Ogundeyi and the woman were saying to each other, and they did not physically fight, but he "could see them being very animated with each other." Security intervened, asked Ogundeyi and his wife to leave, and escorted them out of the building.

¶ 12    For the next 45 minutes to an hour, Johnson would occasionally look out the window, and each time, he saw Ogundeyi standing outside. Johnson testified that, at first, he watched as Ogundeyi and the woman continued to argue. At some point, the woman left, but Ogundeyi remained.

¶ 13    Johnson testified that the group including the woman who called Ogundeyi's wife left the bar just after Ogundeyi and his wife and that the group waited by a car while the husband and wife

5

argued. After the wife left, Ogundeyi walked up to the group and "started confronting them about calling his wife." Ogundeyi first spoke to a woman in the group. Ogundeyi was "very loud" as he "curs[ed] [the woman] out" and called her and the rest of the group "names." A man then got out of the car and told Ogundeyi to "watch his mouth." Johnson testified that the argument was so loud that, although Johnson was watching from a window inside the bar, he could hear the exchange "clear as day." Johnson could not remember who threw the first punch, but he testified that two friends of Ogundeyi "jumped" the man, three women came to his assistance, and one of those women was struck in the face.

¶ 14    Johnson "believe[d]" that he had "call[ed] security to the situation" during the altercation, but "since it was the end of the night, [security] didn't go over and intervene because all of our people were on the inside. But if something like that happened on the outside, we would tell our guards to keep an eye out." Johnson's understanding was that if an altercation

> "happens outside of the bar, our people are not to get involved with it because that would put us in a situation where we would be liable if someone were to get hurt or if anything harmful were to happen. So when those altercations happen outside, we are supposed to immediately call the authorities and let them come and handle it. We are not supposed to get involved in those."

¶ 15    Johnson also testified that he believed that one of the security guards had called police, but he did not know which guard. Johnson estimated that the physical altercation lasted about 10 to 15 minutes before police arrived and that the altercation was still taking place when they arrived. Johnson testified that the police generally would come to DrinkHaus quickly, within 5 minutes after they were called, because there was a "police academy *** on the same block, like a few

blocks down." Johnson, along with six or seven DrinkHaus employees, watched the altercation during those 10 to 15 minutes, from a window inside the bar.

¶ 16    According to Ogundeyi, he went to DrinkHaus around 12:30 a.m., on October 27, 2018, to celebrate a friend's birthday. Ogundeyi noticed one bouncer at the door and two bouncers inside the front entrance. As he entered the bar, Ogundeyi saw his wife's friend, DuPleiss, waving at him. Ogundeyi approached DuPleiss and Curtis and spoke to them for about five minutes. DuPleiss asked Ogundeyi why Harris was not there, and Ogundeyi told her that she could not come because she had to work in the morning. Ogundeyi then went to join his group of friends, where he began speaking with a friend's girlfriend, Walida. Ogundeyi denied that he was flirting with Walida or any other women at the bar.

¶ 17    About 20 minutes later, Harris appeared at the bar. Ogundeyi testified that she arrived at a time when people could no longer come into the bar and that he saw Harris "trying to fight her way in." One of Ogundeyi's friends, Pablo, tried to hold Harris back, and she was hitting him trying to get through to Ogundeyi.

¶ 18    When Harris reached Ogundeyi, she saw that he was talking to Walida, someone Harris was familiar with and knew. Ogundeyi described Harris as "dumbfounded" when she realized that Ogundeyi was talking to Walida. Harris told Ogundeyi that DuPleiss had told her that Ogundeyi was talking to a woman and that she had sent her a video, but Harris was not able to identify the woman he was talking to in the video. Ogundeyi testified that he did not believe his wife would have come to the bar if she had realized he was speaking to Walida, a person who she knew.

¶ 19    Meanwhile, bouncers had followed Harris from the entrance. They told Harris that she needed to leave. Ogundeyi testified that the bouncers tried to "drag her out." Ogundeyi told them not to "rough handle her" and that he would walk her out. Ogundeyi and Harris left the bar "very

quickly," and he walked her to her car. While he was leaving, Ogundeyi thought there was another argument "somewhere in the bar." He didn't see any fights and thought "maybe it was just something minor." Ogundeyi was just focused on "taking [his] wife out of the bar."

¶ 20    After they got outside, Ogundeyi testified that he and Harris spoke for another five to ten minutes before Harris left in her car. Ogundeyi did not leave with his wife because she was "too upset."

¶ 21    Ogundeyi then tried to return to the bar, but the bouncer said he could not go in because "everyone is coming out already." Ogundeyi told the bouncer that he was waiting for a friend who had his car keys. Ogundeyi waited outside, about five feet from the door. He waited outside for 10 minutes before people began exiting, one-by-one. Ogundeyi then saw DuPleiss and Curtis exit the bar. Ogundeyi approached and asked if he could talk to DuPleiss. Ogundeyi asked her

> "why did do you that? I respect you way too much for you to do that. Like are you trying to break my marriage or what are you trying to gain from this? *** My wife told me already you made a video of me, you sent it to her. That was why she was here."

¶ 22    Ogundeyi testified that DuPleiss responded that she "d[id]n't know what [he was] talking about" and asked Curtis to "get [Ogundeyi] out of [her] face." Curtis punched him, and Ogundeyi "lost consciousness" and "went straight on the floor." Ogundeyi looked up and saw his friends "chasing after" and "jumping" Curtis. At that point, Ogundeyi "just left" in his car. Ogundeyi testified that his friend had slipped Ogundeyi's car key into his pocket while he was speaking to DuPleiss and Curtis.

¶ 23    Ogundeyi testified that he spoke to DuPleiss "calmly," and he never touched anyone. He stated that he has a "black belt" in Judo, and he could not fight anyone, or he would "lose his

8

license." Ogundeyi claimed to have never seen plaintiff until a February 2018 court appearance. Ogundeyi also testified that he believed his friend Pablo was the person who hit plaintiff. Ogundeyi testified that Pablo was no longer living in the United States. Ogundeyi did not know where Pablo was living, and he did not know Pablo's last name. Ogundeyi further testified that there was a bouncer by the door who could "vividly see" the entire altercation.

¶ 24    On July 8, 2022, DrinkHaus moved for summary judgment, arguing that it did not have a duty to protect plaintiff from the criminal act of a third party "because Ogundeyi's behavior was not reasonably foreseeable."

¶ 25    In ruling, the court explained that the "issue here *** [is] whether or not there is an existence of a duty owed to" plaintiff, and that whether there was a duty depended on whether the criminal action by Ogundeyi was "reasonably foreseeable." The court explained that the "initial altercation *** occurred inside of the establishment, and that was between Michael Ogundeyi and his wife" and there was no altercation between Ogundeyi and plaintiff or her party inside the bar. After Ogundeyi and his wife were "escorted out," Ogundeyi was "outside of the establishment, on the sidewalk or in the street *** for a period of time." The court continued:

> "Subsequently, after about 45 minutes, the plaintiff and her party exit DrinkHaus. Plaintiff proceeds in the direction of her car across the street, and in that intervening period of time, Michael Ogundeyi gets into a dispute with [DuPleiss], and then subsequently [Curtis] comes up to the scene and *** [plaintiff] is watching all this, and all of a sudden things start to get physical as between [Ogundeyi] and [Curtis], and *** [Ogundeyi] may have touched [DuPleiss] right before that. And then at that point, the plaintiff, Shaconta Fox, leaves the area of her car, which was across the street. *** [S]he said she was standing across the street as she observed [DuPleiss] and [Ogundeyi] having their exchange.

9

Then she's asked *** 'Before you were hit, you intentionally went over to the scene and got involved, correct?' 'Yes,' is her answer. Then she was asked, 'You physically could have walked away from the scene before you were hit, is that correct?' And she says, 'Yes, I could have.' And *** the plaintiff is asked, 'And you made the decision to intervene yourself?' And the plaintiff, Shaconta Fox, answers, 'I did, in defense of my sister and brother. Absolutely.' "

¶ 26    The court concluded that plaintiff was an invitee of DrinkHaus, but noted that the first altercation inside the bar did not involve plaintiff, and that the second altercation outside

"starts with other people, and then the plaintiff based on her own sworn testimony, states that she intentionally went to the scene and got involved.

This set of facts is undisputed. And under this factual scenario, foreseeability has not been established, and cannot be established on the part of [DrinkHaus], and for these reasons, the motion for summary judgment is granted."

¶ 27    On December 7, 2022, plaintiff filed a motion to reconsider the court's order entering summary judgment against her. Plaintiff alleged that the trial court erred in its application of existing law because plaintiff's involvement in the initial altercation was not required to establish foreseeability and because plaintiff's voluntary actions were not relevant to whether a duty existed.

¶ 28    On March 30, 2023, the court held a hearing on the motion to reconsider. After hearing argument from the parties, the trial court ruled:

"this Court does not find that the plaintiff has met the standard for this Court to reconsider its decision. The *** ruling granting the motion for summary judgment stands as this Court does not find that plaintiff movant has been persuasive in her argument that the Court misapplied existing Illinois law."

10

¶ 29 The following day, the trial court entered a written order denying plaintiff's motion to reconsider. Because plaintiff's claims involving Ogundeyi remained, the court also entered a finding pursuant to Illinois Supreme Court Rule 304(a) (Mar. 8, 2016), providing that there was no just reason for delaying enforcement or appeal, or both, of its summary judgment order.

¶ 30 Plaintiff filed a timely notice of appeal from that order, and in this court, plaintiff contends that the trial court erred in granting summary judgment for DrinkHaus. Before turning to the merits of that appeal, however, we must address DrinkHaus's request to strike plaintiff's statement of facts contained in her appellant's brief, based on alleged violations of the supreme court rules regarding briefing. DrinkHaus contends that those violations are "so substantial, [that DrinkHaus] moves to have [plaintiff's statement of facts] stricken in its entirety, in part or it should be disregarded by this Court."

¶ 31 DrinkHaus specifically argues that plaintiff's statement of facts "refers to materials that are not relevant, admissible or evidence in this case." DrinkHaus contends that the "most egregious" violation in plaintiff's statement of facts can be found in two footnotes, in which plaintiff cites a website, which she describes as containing a news article about DrinkHaus shutting down after its owners "fac[ed] a license revocation case for failing to adhere to their operation plan submitted to the city[,] and for staying open after hours" and after other "violent fights broke out inside and outside the venue." DrinkHaus asserts that the website is not part of the record on appeal, and DrinkHaus asks this court to strike or disregard plaintiff's statement of facts "in its entirety, [or] in part" as a sanction for citing extra-record materials. Plaintiff responds that this court may take judicial notice of the article because it comes from a publication that identifies itself as a "news organization *** delivering reliable, nonpartisan and essential coverage" of Chicago neighborhoods.

¶ 32    Presumably, plaintiff cites the news article in its brief to show DrinkHaus's alleged improper conduct in other circumstances, to suggest that they also acted improperly here. Even if the article in the footnote contains relevant evidence that would tend to show DrinkHaus's alleged negligence in this circumstance, this court is not the proper forum for introducing such evidence. Judicial notice cannot be extended to permit the introduction of new factual evidence not presented to the trial court. *Ashland Savings & Loan Ass'n v. Aetna Insurance Co.*, 18 Ill. App. 3d 70, 77-79 (1974). A reviewing court must determine the issues before it on appeal, solely on the basis of the record made in the trial court (*People v. Reimolds*, 92 Ill. 2d 101, 106-07 (1982)), and accordingly, we will not consider the offending footnotes in resolving this appeal.

¶ 33    We do not, however, find that violation, or the other alleged violations of which DrinkHaus complains, to be so egregious as to warrant striking the statement of facts in whole or in part. DrinkHaus also complains that plaintiff's statement of facts violates Illinois Supreme Court Rule 341(h)(6) (Oct. 1, 2020), which requires that the statement of facts be set out "accurately and fairly without argument or comment." DrinkHaus alleges that plaintiff's fact section improperly contains "a summary of her arguments" regarding summary judgment. However, recounting the arguments made by the parties in the trial court is generally necessary to setting out the relevant facts and to assist this court in a full understanding of the proceedings in the trial court. In her brief, plaintiff set out the arguments she made against summary judgment, and she also set out DrinkHaus's arguments for summary judgment. Based on our review of plaintiff's brief and the record, we do not find that plaintiff's recounting of her arguments made in the trial court ran afoul of Rule 341(h)(6).

¶ 34    DrinkHaus also contends that plaintiff's statement of facts should be stricken because it contains an "untrue and baseless inference" that the commotion in the bar involved Ogundeyi and

12

his wife. DrinkHaus contends that the record does not support an inference that the commotion was between Ogundeyi and Harris, when plaintiff and her group admit that they did not personally observe the altercation between Ogundeyi and Harris and where Ogundeyi testified that "there was a completely unrelated commotion taking place as Ogundeyi and his wife left the bar."

¶ 35    As will be explained further below, DrinkHaus's argument on this point suggests the existence of a factual dispute. Plaintiff's position is that the commotion in the bar involved Ogundeyi and his wife, while DrinkHaus contends that the commotion they observed involved unrelated patrons. And the evidence and deposition testimony suggest that there is evidentiary support from which a trier of fact could make either inference. Although Ogundeyi testified that he noticed another altercation in the bar as he and Harris left, he described the other altercation as "something minor" that he did not pay much attention to, which would be inconsistent with what appeared to plaintiff and her group as a more significant altercation. Johnson also testified regarding the altercation between Ogundeyi and Harris and did not mention any other significant altercation between other patrons around the same time period. Ogundeyi minimizes the severity of the altercation in the bar with his wife, suggesting that she calmed down upon realizing with whom he was speaking; however, the altercation inside the bar between Harris and Ogundeyi was significant enough that both were escorted out of the bar, and Ogundeyi was not permitted to reenter. Ogundeyi also testified that he did not leave with Harris because she was still "too upset," and Johnson testified that he watched as Ogundeyi and Harris continued to argue outside the bar.

¶ 36    Although plaintiff's statement of facts contains her inference based on the evidence that the "commotion and argument occurred largely with [Ogundeyi] and his wife," she almost immediately acknowledged the conflicting evidence from Ogundeyi, that he "believed *** there was another altercation or argument in the bar" occurring while he and his wife were being escorted

13

out. Where plaintiff set forth the evidence supporting both inferences in her appellate brief, we do not find a violation of Rule 341(h)(6), and we do not find striking plaintiff's statement of facts to be necessary or appropriate based on the allegedly offending statement.

¶ 37     We now turn to the merits of plaintiff's appeal. Plaintiff asserts that the trial court erred in granting summary judgment based on its conclusion that DrinkHaus did not owe a duty to plaintiff. Plaintiff maintains that a genuine issue of material fact existed as to whether the criminal attack by Ogundeyi was reasonably foreseeable and that summary judgment was not appropriate in such circumstances.

¶ 38     Summary judgment is appropriate where there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law. *Outboard Marine Corp. v. Liberty Mutual Insurance Co.*, 154 Ill. 2d 90, 102 (1992). The purpose of summary judgment is not to try a question of fact but, rather, to determine whether a genuine issue of material fact exists. *Adams v. Northern Illinois Gas Co.*, 211 Ill. 2d 32, 42-43 (2004). In reviewing a grant of summary judgment, this court must construe the pleadings, depositions, admissions, and affidavits strictly against the moving party and liberally in favor of the nonmoving party. *Williams v. Manchester*, 228 Ill. 2d 404, 417 (2008). Where reasonable persons could draw divergent inferences from the undisputed material facts or where there is a dispute as to a material fact, summary judgment should be denied and the issue decided by the trier of fact. *Espinoza v. Elgin, Joliet & Eastern Ry. Co.*, 165 Ill. 2d 107, 114 (1995). Summary judgment is a drastic measure, which should not be granted if the movant's right to judgment is unclear or where reasonable people could draw divergent inferences from undisputed facts. *Outboard Marine Corp.*, 154 Ill. 2d at 102; *Forsythe v. Clark USA, Inc.*, 224 Ill. 2d 274, 280 (2007). A reviewing court will reverse the trial court's granting of summary judgment if it determines that a genuine issue of material fact does exist.

*Cerniglia v. Farris*, 160 Ill. App. 3d 568, 573 (1987). A triable issue precluding summary judgment exists where material facts are disputed or where the material facts are undisputed but reasonable persons might draw different inferences from the undisputed facts. *Id.* at 572-73. Plaintiffs need only present evidence sufficient to show a genuine dispute about a factual issue; they "are not required to prove their case at the summary judgment stage." *Thompson v. Gordon*, 241 Ill. 2d 428 438 (2011). This court reviews an order granting summary judgment *de novo* (*Outboard Marine Corp.*, 154 Ill. 2d at 102), meaning that we "perform the same analysis that a trial court would and that we owe no deference to the trial court's decision" (*Ruda v. Jewel Food Stores, Inc.*, 2024 IL App (1st) 230582, ¶ 37).

¶ 39    In the case at bar, plaintiff seeks recovery from DrinkHaus based on DrinkHaus's alleged negligence. To recover, plaintiff must plead and later prove (1) a duty owed by defendant to plaintiff, (2) a breach of that duty, and (3) an injury proximately resulting from that breach. *Carney*, 2016 IL 118984, ¶ 26. In this appeal, only DrinkHaus's duty to plaintiff is disputed.

¶ 40    Generally, Illinois imposes no duty to protect others from the criminal acts of third parties unless a special relationship exists between the parties, and the criminal attack was reasonably foreseeable. *Jackson v. Shell Oil Co.*, 272 Ill. App. 3d 542, 547 (1995). A special relationship exists between an owner of land and an invitee who enters the premises for the purpose of conducting business. *Loomis v. Granny's Rocker Nite Club*, 250 Ill. App. 3d 753, 758 (1993). And while the owner's duty usually ends when the invitee leaves the owned premises (*Lewis v. Razzberries, Inc.*, 222 Ill. App. 3d 843, 850 (1991)), this court has recognized that a bar owner's duty to protect its patrons from criminal acts of third parties does not end at the bar's property line. *Haupt v. Sharkey*, 358 Ill. App. 3d 212, 218 (2005). In particular, "an owner or operator of premises has a duty to provide a reasonably safe means of ingress and egress both on his premises and,

within limitations dictated by the facts of the case, beyond the precise boundaries of such premises." *Id.*

¶ 41 In this case, DrinkHaus does not appear to contest that a special relationship existed between DrinkHaus and plaintiff, arguing only that Ogundeyi's actions were not foreseeable. A criminal attack by a third person is reasonably foreseeable when the circumstances put a reasonably prudent person on notice of the probability of an attack or when a serious physical altercation has already begun. *Lucht v. Stage 2, Inc.*, 239 Ill. App. 3d 679, 686 (1992). The supreme court has explained that imposing a duty to protect business invitees from a reasonably foreseeable criminal attack is based on the idea that "when a possessor of land opens his premises to the public for business purposes, he must recognize the risk that has been created." *Marshall v. Burger King Corp.*, 222 Ill. 2d 422, 439 (2006). The business:

"might indeed anticipate, either from common experience or known fact, that places of general public resort are also places where what men can do, they might. One who invites all may reasonably expect that all might not behave, and bears responsibility for injury that follows the absence of reasonable precaution against that common expectation." (Internal quotation marks omitted.) *Id.*

¶ 42 Before conducting our *de novo* review of the evidence in the record, we note that the trial court appears to have based its conclusion that Ogundeyi's criminal action was not reasonably foreseeable—and, accordingly, that DrinkHaus owed no duty to plaintiff—almost entirely on two factors: (1) that plaintiff was not involved in the initial altercation inside the bar and (2) that plaintiff intentionally involved herself in the altercation outside the bar. This court finds, however, that consideration of the above factors does not support the entry of summary judgment.

¶ 43    First, the fact that plaintiff was not directly involved in the altercation that occurred inside the bar does not preclude the bar's liability to support the entry of summary judgment for DrinkHaus. This court has previously reversed a directed verdict in favor of a nightclub, finding that there was evidence to support a conclusion that the criminal attack on the plaintiff was reasonably foreseeable, even though the plaintiff had not been involved in the initial altercation inside the nightclub that led to her attacker being ejected. *Osborne v. Stages Music Hall, Inc.*, 312 Ill. App. 3d 141, 149 (2000). And although plaintiff was not directly involved in the initial altercation, DrinkHaus was aware, through its employees, that plaintiff and her group were connected to that altercation. Johnson and a bartender were aware of the communication by DuPleiss that led to Harris coming to the bar to confront Ogundeyi and had knowledge that Ogundeyi had a reason to be angry at DuPleiss and her group while he waited outside the bar for 45 minutes to an hour.

¶ 44    The trial court also placed great emphasis on its conclusion that plaintiff "intentionally went to the scene and got involved." However, plaintiff's motivations and actions in intervening in a physical altercation between Ogundeyi and her siblings were not proper considerations on summary judgment as to DrinkHaus's duty, as it does not bear on whether Ogundeyi's criminal action was reasonably foreseeable. If anything, the plaintiff's decision to involve herself in the altercation to protect her siblings could go to plaintiff's degree of culpability in her own injuries. Indeed, DrinkHaus has asserted an affirmative defense of contributory negligence, based on plaintiff's alleged "fail[ure] to exercise reasonable care for her own safety," by, among other things, "[i]ntentionally and purposefully insert[ing] herself into a dangerous and threatening situation" and by "[i]ntentionally and purposefully inserting herself into a verbal argument." Whether DrinkHaus can sustain its burden as to the affirmative defense of contributory negligence

is not a proper consideration on summary judgment as to DrinkHaus's duty to plaintiff. See *Vroegh v. J&M Forklift*, 165 Ill. 2d 523, 530 (1995) (An affirmative defense admits the legal sufficiency of the cause of action but asserts new matter by which the plaintiff's right to recovery is defeated.).

¶ 45    Based on our *de novo* review of the record, construing the evidence against DrinkHaus and resolving all inferences in plaintiff's favor, we find that a genuine issue of material fact exists as to whether DrinkHaus owed a duty to plaintiff and that the attack by Ogundeyi was reasonably foreseeable.

¶ 46    In so holding, this court finds several cases instructive. In *Shortall v. Hawkeye's Bar & Grill*, 283 Ill. App. 3d 439 (1996), the appellate court reversed summary judgment in favor of a bar, holding that there was a genuine issue of material fact as to whether the bar may have had a duty to protect the plaintiff from a stabbing that occurred approximately 15 minutes after the plaintiff left the bar to go to his car, 60 feet from the bar's property. *Id.* at 441, 444. The court concluded that the bar "was under the same duty as if the fight had occurred inside the bar" and that the criminal attack was reasonably foreseeable. *Id.* at 445. The bartender saw three men verbally and physically harassing the plaintiff and another patron inside the bar before a fight erupted outside, and the bar escalated the situation by ushering some patrons outside into the fight, while the bar's bouncers watched the fight through a window and did nothing. *Id.* at 443-44. The appellate court explained that "tavern owners may not avoid application of the duty to act to protect invitees from criminal attack[s] by third parties simply because the disturbance giving rise to the duty occurs just out the front door, especially where the owner contributes to the altercation by sending patrons out into it." *Id.* at 444.

¶ 47    Similarly, in *Osborne*, 312 Ill. App. 3d at 145, a nightclub patron was criminally attacked by another patron who had been ejected from the nightclub earlier in the evening. After being

ejected, the attacker and his friend pounded on the doors and yelled profanities at the bouncers. *Id.* When the plaintiff and a friend walked out of the nightclub, plaintiff's friend was slapped by one of the men, and, when plaintiff ran toward her friend, the attacker kicked her in the face. *Id.* at 145. The trial court directed a verdict in favor of the nightclub, finding that it owed no duty to the plaintiff because the incident occurred on the sidewalk and concluding the attacker's actions were not reasonably foreseeable. *Id.* at 146. The appellate court reversed and remanded, holding that "[w]hether the assault takes place in or outside the actual premises of the business owner, the dispositive factor remains the reasonable foreseeability of the actions taken by the third party." *Id.* at 148. The *Osborne* court explained that there was evidence to support a conclusion that the attack was reasonably foreseeable—the bouncers knew the attackers were "combative, and angry" and involved in an earlier physical altercation inside the club. *Id.* at 149. After ejecting the attackers, "the bouncers exported the club's problems to the sidewalk and then ignored the troublemakers while allowing two female patrons to leave through locked doors into the path of potentially dangerous men." *Id.*

¶ 48    Additionally, in *Haupt v. Sharkey*, 358 Ill. App. 3d at 219, the appellate court again reversed summary judgment for a tavern owner, finding that a tavern could be liable for a criminal attack against one of its patrons which occurred just outside the tavern's property in a parking area. The tavern owner knew that the attacker had a propensity for fighting, saw the attacker start a fight with the plaintiff inside the tavern, and then kicked out both men at the same time. *Id.* at 219-20. The court explained that there "is no bright-line rule that a tavern owner's duty to protect its patrons from criminal acts of third parties absolutely ends at the precise property line of the tavern." *Id.* at 218. The court held that a tavern's duty "to provide a reasonably safe means of ingress and egress

to patrons," and the foreseeability of the criminal attack that occurred as the patron was evicted from the tavern precluded summary judgment in the tavern's favor. *Id.* at 219-220.

¶ 49 Finally, and most recently, in *Cooke v. Maxum Sports Bar & Grill, Ltd.*, 2018 IL App (2d) 170249, ¶ 77, the second district appellate court found that the trial court had "properly determined that [the nightclub] owed plaintiffs a duty to protect plaintiffs" from the criminal attack of another patron. The nightclub argued that the criminal attack was not reasonably foreseeable because "prior to the attack [the attacker] had not been involved in a fight or threatened anyone and [the nightclub] had no history of fights on its premises that put it on notice of any danger to plaintiffs while they were on the premises." *Id.* ¶ 71. The court found, however, that the nightclub had knowledge, through its employees, "that [the attacker] was angry that night." *Id.* ¶ 72. The attacker had been arguing with other patrons, had been shouting obscenities, and had "grabbed [the plaintiff] outside [the nightclub's] front entrance." *Id.* Additionally, the plaintiff and his friend "had asked one of the bouncers for help dealing with" the attacker. *Id.* The attacker had been removed from the "premises for bad behavior" but the nightclub employees allowed him to leave in the same direction as the plaintiff and his friend, "about one minute after they left." *Id.* The court found that, "[g]iven these facts and the bouncers' inaction, [the attacker's] criminal attack was reasonably foreseeable to [the nightclub]." *Id.*

¶ 50 Similar to the above cases, there is evidence in the record from which a trier of fact could conclude that DrinkHaus owed a duty to plaintiff and that Ogundeyi's criminal attack was reasonably foreseeable.

¶ 51 Specifically, there was deposition testimony showing that upon entering DrinkHaus, Ogundeyi saw DuPleiss, who was a friend of his wife, Harris, at the bar. After speaking to Ogundeyi, DuPleiss contacted Harris to tell her that Ogundeyi was flirting with another woman.

Harris arrived at the bar approximately 20 minutes later, pushed her way inside, and repeatedly hit one of Ogundeyi's friends to get to Ogundeyi. Johnson testified that he watched the interaction between Ogundeyi and Harris, that they were being "very animated with each other," and that two security guards intervened, escorting Ogundeyi and Harris out of the bar.

¶ 52    The evidence also showed that Johnson, the bar manager, was aware of the communication by DuPleiss that led to Harris coming to the bar to confront Ogundeyi. Despite DrinkHaus employees knowing that Ogundeyi had a reason to be angry at DuPleiss and her group, DrinkHaus employees let Ogundeyi remain just outside the bar's exit for up to an hour and directed plaintiff and her group to exit the bar where Ogundeyi was waiting. Then, DrinkHaus employees watched from mere feet away, as Ogundeyi confronted DuPleiss, yelling and acting aggressively toward her. DuPleiss asked for help from the security guard, who was standing a few feet away and was ignored. DrinkHaus employees continued to watch as a physical altercation lasting as long as 15 minutes occurred, during which Ogundeyi and his companions attacked multiple individuals in plaintiff's group. During this altercation, Ogundeyi punched plaintiff in the eye, leaving her with lasting injuries. DrinkHaus employees, several of whom watched the entire 15-minute altercation, did not intervene at any point, and one guard outside the door merely told the group to move the fight elsewhere.

¶ 53    Although DrinkHaus will undoubtedly dispute some of the evidence above, or suggest that the factfinder should draw different inferences from the evidence—in particular regarding the severity of the initial altercation inside the bar, whether the significant "commotion" observed by plaintiff and her party involved Ogundeyi and his wife, and Ogundeyi's motivations for standing outside the bar—such issues are factual issues that are inappropriate to resolve at the summary judgment stage. See *Coole v. Central Area Recycling*, 384 Ill. App. 3d 390, 396 (2008) ("With a

summary-judgment motion, the trial court does not decide a question of fact but, rather, determines whether one exists. Thus, a court cannot make credibility determinations or weigh evidence in deciding a summary-judgment motion.").

¶ 54    In sum, construing the pleadings and evidentiary material in the record strictly against DrinkHaus, as the movant, we conclude that the trial court erred in granting DrinkHaus's motion for summary judgment. Genuine issues of material fact exist in this case regarding DrinkHaus's duty to plaintiff and the foreseeability of Ogundeyi's criminal action. Accordingly, we reverse the trial court's order granting DrinkHaus's motion for summary judgment and remand this case for further proceedings.

¶ 55    Reversed and remanded.

*Fox v. Food & Drink Chicago, Inc.*, **2024 IL App (1st) 230755**

| | |
|---|---|
| **Decision Under Review:** | Appeal from the Circuit Court of Cook County, No. 20-L-11127; the Hon. Daniel A. Trevino, Judge, presiding. |
| **Attorneys for Appellant:** | Robert G. Black, of Law Offices of Robert G. Black, P.C., of Naperville, for appellant. |
| **Attorneys for Appellee:** | Stacy D. Fulco, of Bodell Bove LLC, of Oak Brook, for appellee. |